194 F.3d 1367 (Fed. Cir. 1999)
 AUGUSTINE MEDICAL, INC., Plaintiff-Appellant,
v.
PROGRESSIVE DYNAMICS, INC., EUGENE KILBOURN, ROBERT CROZIER, BLUE RIDGE ANESTHESIA & CRITICAL CARE, INC., BRETT SMITH, STEVEN MORRIS, KEOMED, INC., DESMOND KEOGH, CENTRAL MEDICAL, INC. and DENNIS MILLS,
Defendants-Appellees.
 98-1364
 United States Court of Appeals for the Federal Circuit
 DECIDED: October 25, 1999
 
 Appealed from: United States District Court for the District of Minnesota Judge James M. RosenbaumJacob M. Holdreith, Oppenheimer Wolff & Donnelly LLP, of Minneapolis, Minnesota, argued for plaintiff-appellant. With him on the brief were Craig J. Lervick and Christopher C. Cain. Of counsel on the brief was J. Randall Benham, Augustine Medical, Inc., of Eden Prairie, Minnesota. Of counsel was Robert M. Rauker, Oppenheimer Wolff & Donnelly LLP, of Minneapolis, Minnesota.
 Christopher R. Magid, Dorsey & Whitney LLP, of Minneapolis, Minnesota, argued for defendants-appellees. With him on the brief was Joseph F. Haag. Of counsel was Mark A. Wolfe.
 Before MAYER, Chief Judge, RADER, and GAJARSA, Circuit Judges.
 GAJARSA, Circuit Judge.
 
 DECISION
 
 1
 Augustine Medical, Inc. ("Augustine") appeals from the March 28, 1997 grant of summary judgment to Progressive Dynamics, Inc. ("Progressive") by the United States District Court for the District of Minnesota dismissing Augustine's claims of patent infringement. See Augustine Med., Inc. v. Progressive Dynamics, Inc., No. 4-96-CV-345 (D. Minn. March 28, 1997). After concluding that the district court correctly construed the language of the Settlement Agreement between the two parties, we affirm the district court's grant of summary judgment.
 
 BACKGROUND
 I. 1993 Unfair Competition Lawsuit
 
 2
 Augustine sued Progressive on June 2, 1993, in Minnesota federal district court claiming unfair competition, false advertising, deceptive trade practices, and product disparagement. The claims generally related to Progressive's alleged misrepresentations to customers concerning the effectiveness of its products and their compatibility with Augustine's product. Progressive counterclaimed, alleging violations of section 43(a) of the Lanham Act, deceptive trade practices, illegal tying arrangements, and attempted monopolization. It is undisputed that patent infringement was not part of this lawsuit; nevertheless, Progressive's convective warming blankets at issue in this unfair competition suit were the same as the accused blankets in the later-filed patent infringement suit, which we discuss below.
 
 
 3
 The parties entered into a Settlement Agreement and Release of Claims on April 24, 1995 ("Settlement Agreement"). The Settlement Agreement states in Paragraph 1:
 
 
 4
 AMI does hereby . . . release and forever discharge PDI from any and all manner of action or actions . . . that AMI and/or its owners . . . have, have had, or may have against PDI upon or by reason of or relating to any acts, omissions or statements made by PDI on or before the date of this Settlement Agreement, including, but not limited to, any and all claims that were or could have been asserted by AMI in the [present lawsuit]. . . . AMI covenants and agrees not to commence any action or proceeding against PDI arising out of or related to, statements not otherwise precluded by this Settlement Agreement made after the date hereof that are in substance repetitions of statements made by PDI prior to the date of this Settlement Agreement that were at issue in the above-referenced litigation.
 
 
 5
 (Emphasis added.)
 
 
 6
 During the negotiation of the Settlement Agreement, Augustine asserts that Progressive sought a license from Augustine. According to Augustine, it informed Progressive that it would not agree to refrain from suing Progressive in the future for patent infringement occurring after the date of the Settlement Agreement. On its part, Progressive asserts that Augustine requested that the Settlement Agreement be revised to specifically exclude claims of patent infringement, but Progressive refused, and Augustine signed the Settlement Agreement as drafted.
 
 II. 1995 Patent Infringement Lawsuit
 
 7
 On October 19, 1995, Augustine sued Progressive and various individual defendants for infringement of its '188, '102, '320, '371, and '417 patents.[1] All five of the patents issued prior to the date of the Settlement Agreement. The lawsuit specifically limits the claims to Progressive's actions occurring after April 24, 1995, the date of the Settlement Agreement. Progressive's accused convective warming blankets were on sale in a materially identical form prior to the execution of the Settlement Agreement.
 
 
 8
 On December 22, 1995, Progressive moved to dismiss for failure to state a claim and to dismiss the claims against the individual defendants. The district court granted the latter motion, and Augustine does not appeal that issue. On December 10, 1996, Progressive moved for summary judgment on all of the patent claims based on the April 24, 1995 Settlement Agreement. The district court conducted a hearing on March 28, 1997 and granted Progressive's motion, stating that Augustine was trying "simply to reopen that which [the parties] have already agreed upon and settled," that Augustine's present lawsuit was a "future dispute[ ] involving activity that had already begun," and that, by Augustine's own admission, all of the claims could have been asserted prior to execution of the Settlement Agreement. Augustine Med., slip op. at 19-20. Augustine filed a timely appeal with this court on the grant of summary judgment.
 
 DISCUSSION
 I. Standard of Review
 
 9
 On appeal, we review a grant of summary judgment de novo in which we view all evidence, make all reasonable inferences, and resolve all factual disputes in favor of the nonmovant, reapplying the standards of review used below. See Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc., 103 F.3d 1571, 41 USPQ2d 1263 (Fed. Cir. 1997), cert. denied, __ U.S. __, 118 S. Ct. 69 (1997); see also Opus Corp. v. IBM, 141 F.3d 1261, 1265 (8th Cir. 1998). The interpretation of a Settlement Agreement, i.e., a contract, is a question of law that we review de novo. See Mays v. United States Postal Serv., 995 F.2d 1056, 1059 (Fed. Cir. 1993) ("The settlement agreement is a contract, of course, and its interpretation is a matter of law."). A court of appeals applies the state's contract law in interpreting a settlement agreement. See Gjerlov v. Schuyler Lab. Inc. 131 F.3d 1016, 1020, 44 USPQ2d 1881, 1885 (Fed. Cir. 1997). Minnesota contract law holds that the settlement of a lawsuit is contractual in nature, requiring offer and acceptance for its foundation, and it is subject to all of the other rules of interpretation and enforcement. See Theis v. Theis, 271 Minn. 199, 204, 135 N.W.2d 740, 744 (1965). Whether an implied license exists is a question of law that we review de novo. See Glass Equip. Dev., Inc. v. Besten, Inc., 174 F.3d 1337, 1341 (Fed. Cir. 1999). The burden of proving that an implied license exists is on the party asserting an implied license as a defense to infringement.[2] See Met-Coil Sys. Corp. v. Korners Unlimited, Inc., 803 F.2d 684, 687, 231 USPQ 474, 476 (Fed. Cir. 1986).
 
 II. Analysis
 A. The Settlement Agreement Release
 
 10
 This is a case of first impression for this court in interpreting the language of the Settlement Agreement reached between the two parties. We must determine whether the language as drafted by Augustine and Progressive functions as a bar to any future claims of Augustine for patent infringement occurring after the Settlement Agreement, related to those goods that were included in the Settlement Agreement.
 
 
 11
 Augustine would have us construe the language of the Settlement Agreement, namely:
 
 
 12
 AMI does hereby . . . release and forever discharge PDI from any and all manner of action or actions . . . that AMI and/or its owners . . . have, have had, or may have against PDI upon or by reason of or relating to any acts, omissions or statements made by PDI on or before the date of this Settlement Agreement,
 
 
 13
 as limiting the release to "claims based on PDI's pre-settlement actions and does not refer to future claims." Progressive urges us to affirm the district court's holding, adopting the position that the language "may have" was prospective in nature, and therefore the release barred future claims that would arise after the date of the Settlement Agreement, as long as the claims were related to acts that were taken on or before the date of the Settlement Agreement. For the following reasons, we find that the terms of the Settlement Agreement clearly reach the present dispute between the parties, and therefore find Progressive's interpretation of the settlement provisions to be correct.
 
 
 14
 The phrase "may have" is necessarily future-oriented. In the context of the Settlement Agreement, it implies a future possibility of Augustine having a claim. Augustine argues that the phrase "have, have had, or may have" is restricted by the phrase which appears later in the same paragraph, "on or before the date of this Settlement Agreement," and argues that a claim could not have existed on or before the date of the Settlement Agreement because the post-settlement patent infringement had not yet occurred. We find this interpretation to be contrary to the clear language of the agreement by unduly emphasizing the role of the settlement date clause.
 
 
 15
 Specifically, Augustine fails to consider the intervening words between the two phrases they cite. In "releas[ing] . . . PDI from any and all . . . actions . . . that AMI . . . may have against PDI . . . relating to any acts, omissions or statements made by PDI on or before the date of th[e] Settlement Agreement," Augustine has discharged its ability to sue Progressive not for claims that existed on or before the date of the Settlement Agreement, but for claims related to any actions taken by Progressive on or before the date of the Settlement Agreement. Prior to and on the date of the Settlement Agreement, as well as after the date of the Settlement Agreement, Progressive was producing and marketing the convective warming blankets at issue. Augustine's claims for patent infringement then are undeniably related to Progressive's production and marketing of the goods at issue on or before the date of the Settlement Agreement. While Augustine's claims for patent infringement in the present litigation are not directly based on Progressive's actions prior to the date of the Settlement Agreement, they are sufficiently related to those pre-settlement actions so as to fall within the clear meaning of the language of the agreement.
 
 
 16
 Augustine contends that because we have held patent infringement to be a continuing tort, see Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1221-22 , 36 USPQ2d 1225, 1232 (Fed. Cir. 1995), and therefore, each act of infringement gives rise to a separate cause of action, see A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1031, 22 USPQ2d 1321, 1326 (Fed. Cir. 1992), Augustine should be allowed to bring a claim against Progressive for the latter's alleged infringement that occurred after the date of the Settlement Agreement, even though Augustine knew the allegedly infringing actions were taking place prior to the Settlement Agreement as well. While Progressive's counter-argument is not on point because its assertion of continuing torts as a unitary claim is related to the doctrine of laches, we nevertheless find Augustine's argument unpersuasive. While issues of patent infringement do give rise to individual causes of action, those individual causes of action cannot override the unambiguous language of a Settlement Agreement that releases all possible future claims related to the matters settled by the agreement.
 
 
 17
 Our interpretation of the language of the Settlement Agreement is consistent with judicial interpretation of general releases in settlement agreements. Both parties agree that their settlement provided a general release containing very broad language, such as "release and forever discharge," "any and all manner of action or actions," "relating to any acts, omissions or statements made by Progressive," and "including, but not limited to, any and all claims that were or could have been asserted by AMI in the [present lawsuit]." General language such as these phrases have consistently been held by the courts to constitute a waiver of all claims and causes of action "arising under or by virtue of the contract," United States v. William Cramp & Sons Ship & Engine Bldg. Co., 206 U.S. 118, 128 (1907), and of all "claims based upon events occurring prior to the date of the release." Johnson, Drake & Piper, Inc. v. United States, 531 F.2d 1037, 1047 (Ct. Cl. 1976).
 
 
 18
 Closely analogous to the case before us is Press Mach. Corp. v. Smith R.P.M. Corp., 727 F.2d 781 (8th Cir. 1984). In that case, Smith, a newspaper printing press manufacturer, entered into a contract with DEV Industries, Inc., in which the latter agreed not to compete with Smith in the press conversion systems industry for two years. See id. at 783. Three months after the signing of the contract, DEV established Press Machinery Corp. ("PMC") to compete against Smith. See id. Smith filed suit against PMC and DEV, but the parties entered into a settlement agreement immediately prior to trial. See id. That agreement released the parties from: all claims, rights of action, causes of action and demands of every kind and character which the parties hereto now have or under any circumstances could or might have, against the other arising out of, resulting from or in any way pertaining to the agreements and matters referred to in [the pleadings].
 
 
 19
 Id. at 783 (emphasis added). PMC later filed suit against Smith for breach of this settlement agreement and for a declaratory judgment of noninfringement of Smith's patent. See id. The district court granted PMC's summary judgment motion. See id. Our sister circuit affirmed the decision holding that:
 
 
 20
 The agreement is broad and employs expansive terminology. The release in the settlement agreement is not limited to the cause of action then at issue; nor is it limited to resolving past disputes. The agreement was an attempt to resolve finally those disputes then at issue and those that might arise in the future.
 
 
 21
 Id. at 785-86 (emphasis added).
 
 
 22
 The language of the settlement agreement in Press Machinery is similar enough to the language in the Settlement Agreement between Augustine and Progressive to be instructive in this case. In Press Machinery, the agreement includes prospective language, "might have," just as the Settlement Agreement does in the case at bar. Compare Press Mach., 727 F.2d at 785-86, with Pearson v. Quickturn Design Sys., No. Civ. 97-20907 SW, 1998 WL 34607, at *5 (N.D. Cal. Jan. 23, 1998) (holding that the language referring to claims which "Pearson now has or ever has had" was not prospective and therefore "did not refer to claims arising out of conduct subsequent to the date of the Settlement Agreement") (emphasis added).
 
 
 23
 Another similarity between the settlement agreement in Press Machinery and Augustine and Progressive's agreement is that the former also allowed for a general and indirect relationship between the future claims and the matters involved in the prior settlement agreement, using the phrase "or in any way pertaining to the agreements and matters referred to." Press Mach., 727 F.2d at 783. In the case before us, the Settlement Agreement contains the phrase "or relating to," which implies the same permissible indirect relationship between Augustine's possible future claims and Progressive's actions. In addition, the overall release of the settlement agreement in Press Machinery is equally as general as the release contained in Augustine's and Progressive's agreement. In considering the Settlement Agreement as a whole, the natural and ordinary meaning of the agreement between Augustine and Progressive is unambiguous: it was meant to be a general release putting an end to all matters arising under the Settlement Agreement, including any patent infringement claims that Augustine "may have" regarding the convective warming blankets, which were the product at issue in the agreement. See William Cramp & Sons Ship & Engine Bldg., 206 U.S. at 128.
 
 
 24
 Consistent also with judicial interpretations of general releases, it is the burden of the parties entering into a settlement agreement to expressly reserve in the agreement any rights that they wish to maintain beyond the date of the settlement of agreement. The Supreme Court stated in Cramp that "general language . . . indicates an intent to make an ending of every matter arising under or by virtue of the contract. If the parties intend to leave some things open and unsettled, their intent so to do should be made manifest." Id. at 128. Our predecessor court by which we are bound also spoke to this issue and expanded the coverage to possible claims that should have been known at the time of a settlement agreement:
 
 
 25
 The rule for releases is that absent special vitiating circumstances, a general release bars claims based upon events occurring prior to the date of the release. And no exception to this rule should be implied for a claim whose facts were well enough known for the maker of the release to frame a general description of it and request an explicit reservation.
 
 
 26
 Johnson, Drake & Piper, 531 F.2d at 1047 (emphasis added) (citations omitted). Here, Augustine had clear knowledge at the time of the Settlement Agreement that Progressive was producing and marketing the convective warming blankets at issue in the first suit and the Settlement Agreement, and it was likely obvious that the production and marketing would not cease the instant the Settlement Agreement was signed. Therefore, it was Augustine's responsibility to "ma[k]e manifest" its intent to leave the issue of possible future patent infringement claims open for future resolution. Because Augustine knew that factually a claim would exist after the Settlement Agreement, we can grant "no exception to this rule."
 
 
 27
 Augustine unpersuasively counters this by arguing that its claims for patent infringement were not ripe at the time of the Settlement Agreement because the post-settlement infringing actions had not yet occurred. Augustine's argument, however, relies on cases addressing when a claim is ripe for adjudication, not when a claim exists for purposes of a release. We have held that when dealing with post-settlement claims, the issue becomes not one of when a claim is ripe, but rather whether the "claimant 'had' or possessed a claim, sufficiently to reserve it from a general release." Id. at 1047. Because Augustine had clear knowledge of Progressive's manufacture and sale of the convective warming blankets at the time of the Settlement Agreement, it had a claim for alleged patent infringement against Progressive at that time and should have expressly reserved that claim.
 
 B. The Implied License
 
 28
 Augustine also argues to this court that by dismissing its post-settlement infringement claims against Progressive, the district court granted Progressive an implied license for infringing activities occurring after the date of the Settlement Agreement. We first note that the district court did not base its grant of summary judgment on the finding of an implied license. Rather, the decision was based on the unambiguous release of future claims contained in the Settlement Agreement.
 
 
 29
 Second, we have held that the argument of implied license is a defense to a patent infringement allegation. See Met-Coil Sys. Corp. v. Korners Unlimited, Inc., 803 F.2d 684, 687, 231 USPQ 474, 476 (Fed. Cir. 1986). Augustine's application of that argument in this case would turn the law of implied licenses from a defense to an offense. We are not willing to construe the law in such a manner today.
 
 
 30
 Even if we were to review whether there was an implied license, given our de novo review, we find Augustine's argument as to the "express license" contained in the Settlement Agreement unpersuasive. It does not necessarily follow that simply because there was an express license for "in substance repetitions" of pre-settlement statements made after the Settlement Agreement, that the finding of an implied license is precluded. The case law that Augustine cites to support this proposition is inapposite here. First, in Met-Coil, there was no express license at issue. In Mahurkar v. C.R. Bard, Inc., No. 92-C-4803, 1993 WL 259446 (N.D. Ill. July 6, 1993), the express license that did exist specifically addressed the alleged infringement activity that gave rise to the cause of action. In the case before us, the express license granted by Augustine did not relate to the alleged infringement action. Rather, it granted Progressive a license relating to the unfair competition claims alleged in the first suit, which produced the Settlement Agreement.
 
 C. Extrinsic Evidence
 
 31
 Finally, Augustine argues to this court that if we affirm the district court's finding it must be based on an ambiguity in the language of the Settlement Agreement, and therefore we should consider extrinsic evidence in order to interpret the ambiguous meaning. See Donnay v. Boulware, 275 Minn. 37, 44, 144 N.W.2d 711, 716 (1966). Because we have found that the Settlement Agreement is unambiguous in its release of all claims past and future related to the products at issue in the Settlement Agreement, we do not need to consider the extrinsic evidence presented by the parties.
 
 CONCLUSION
 
 32
 For the reasons stated above, we affirm the holding of the United States District Court for the District of Minnesota.
 
 AFFIRMED
 
 
 NOTES:
 
 
 [1]
 The '102 and '417 patents have been withdrawn from the lawsuit in response to Rule 11 motions offered by Progressive. However, Augustine in its brief only admits to withdrawal of the '417 patent, asserting that the '102 patent is still at issue. Augustine eventually admits in its reply brief that the '102 patent is not at issue either.
 
 
 [2]
 In this case, the patentee (Augustine) argues that an implied license was created depriving Augustine of its rightful property rights. Normally, the accused infringer argues that an implied license exists in order to avoid infringement.