**Rolf DIETRICH, Plaintiff,**

v.

**TREK BICYCLE CORPORATION, Defendant.**

No. 02–C–552–C.

United States District Court, W.D. Wisconsin.

May 22, 2003.

Eugenia G. Carter, Madison, WI, for Plaintiff.

Keith D. Parr, Lord, Bissell & Brook, Chicago, IL, for Defendant.

## OPINION & ORDER

CRABB, District Judge.

This is a difficult case arising at the intersection of contract and patent law. Plaintiff Rolf Dietrich contends that defendant Trek Bicycle Corporation is violating a patent license the parties entered into as part of a settlement agreement disposing of an earlier suit, which requires defendant to mark certain of its bicycle wheels with the number of one of plaintiff's patents. Defendant maintains that plaintiff released this claim when he agreed to settle the earlier suit, that in any case the patent at issue is invalid and unenforceable and that the wheels in question do not embody the

invention disclosed in plaintiff's patent. Jurisdiction is present. 28 U.S.C. § 1332.

I will deny both parties' motions for summary judgment. Defendant's summary judgment motion will be denied because plaintiff's claim for breach of the patent license is not barred by the settlement agreement's release provision. Moreover, I conclude that the release bars defendant from challenging the validity and enforceability of plaintiff's patent in this suit. However, I will also deny plaintiff's summary judgment motion because I conclude that the doctrine of claim preclusion does not bar defendant from contesting plaintiff's claim that defendant's Bontrager bicycle wheels embody the invention disclosed in plaintiff's patent. This claim will be determined by a jury after the court has construed a particular term in plaintiff's patent as a matter of law. Finally, I will grant plaintiff's motion to strike those portions of defendant's reply brief in which defendant argues that the settlement agreement's marking provision was not supported by consideration. Finally, I will deny plaintiff's motion to strike the declaration of defendant's expert, Jobst Brandt.

## UNDISPUTED FACTS

Plaintiff Rolf Dietrich is a citizen of Ohio. Defendant Trek Bicycle Corporation is a corporation existing and incorporated under the laws of Wisconsin, with its principal place of business in Waterloo, Wisconsin. Defendant develops, manufactures and sells bicycle products and accessories, including Bontrager-branded road wheels. Plaintiff is the owner of the now disclaimed and invalid U.S. Patent No. 5,445,439 (the '439 patent), which relates to bicycle wheels with a "paired spoke" arrangement and which was licensed exclusively to defendant. A "paired spoke" wheel arranges spokes in pairs with a spoke from the right side of the wheel hub and a spoke from the left side of the hub attached to the rim at approximately the same point. By contrast, in a conventional wheel, spokes are spaced at even distances around the circumference of the rim, with spokes from the right side of the hub alternating with spokes from the left. The paired spoke design permits the number of spokes to be reduced, makes a wheel stronger, lighter and more aerodynamic and eliminates a dangerous phenomenon known as "speed wobble" that afflicts bicycles with conventional wheels when used at high speeds. Plaintiff also owns U.S. Patent No. 5,931,-544 (the '544 patent), which also relates to bicycle wheels with a paired spoke arrangement and which was previously licensed exclusively to defendant, but which is now the subject of a perpetual, fully prepaid, nonexclusive license held by defendant.

In 1996, plaintiff licensed his patents to defendant. For a time after the execution of the 1996 license, plaintiff served as an employee of defendant, working on the manufacture and marketing of paired spoke wheels that defendant sold under the Rolf trademark. Defendant's Rolf wheels proved enormously popular. By the end of 2000, defendant had manufactured and sold hundreds of thousands of paired spoke wheels under the Rolf trademark. The original term of the patent license would have expired on December 31, 2001. After the parties were unable to agree on an extension, defendant sued plaintiff in this court on February 20, 2001. Defendant sought a declaration that the '439 and '544 patents are invalid and unenforceable and that defendant had rights to certain of plaintiff's patents, as well as other relief, including the return of royalties and wages paid to plaintiff. Plaintiff counterclaimed, alleging among other things that defendant had breached the license agreement by underpaying roy-

alties. In response to defendant's suit, *Trek Bicycle Corp. v. Dietrich,* case no. 01–C–120–C, plaintiff admitted that the '439 patent is invalid and disclaimed the remaining term of the '439 patent, dedicating its subject matter to the public.

The parties eventually negotiated a settlement agreement and the case was dismissed with prejudice. The settlement agreement was made effective as of September 25, 2001, and included a new patent license that became effective on the same date. Under the patent license, plaintiff granted defendant rights under three of his patents, including the '544 patent, as well as under any subsequent patent or application that claimed priority from any of those three patents. In particular, defendant received a non-exclusive, perpetual and fully-prepaid license for plaintiff's '544 patent. Defendant paid plaintiff a one-time royalty payment of $200,000 for the new license. Paragraph 2.3 of the patent license reads as follows:

All products that embody the inventions claimed by United States Letters Patent No. 5,931,544 ... made, used, sold or imported into the United States shall have affixed to the product a label or other marking identifying United States Letters Patent No. 5,931,544.

Paragraph 12 of the settlement agreement reads as follows:

Dietrich hereby fully, finally and completely remises, releases and forever discharges Trek ... of and from all claims and demands, in law or equity, in any court or in any manner, which Dietrich now has or claims to have, or which may hereafter accrue against the said Releasees, or any one or more of them arising or growing out of any event occurring at any time before the date hereof, including, without limiting the generality of the foregoing, all claims and demands arising or growing out of those identified in the Wisconsin Action, or any cause of action set forth or which could have been set forth in the pleadings or amended pleadings filed in the Wisconsin Action.... As a part of the consideration for the payment to the undersigned and his attorneys of the amount hereinabove mentioned, Dietrich hereby releases all claims including all those for known or unknown and anticipated and unanticipated damages.

Plaintiff filed the present suit seeking to enforce the settlement agreement and, in particular, paragraph 2.3 of the new patent license.

Defendant manufactures and sells bicycle wheels under the Bontrager trademark. Defendant's Bontrager wheels employ paired spoke technology. The Bontrager road wheels have a rim and a hub with two flanges, each on opposite sides of the wheel center plane. They have a threaded means of adjusting the tension of each spoke independently of the tension of the other spokes. At the rim, the distance between the spokes in a pair of Bontrager "Race X Lite" road wheels is approximately one inch each. The Bontrager wheels are not marked with any of plaintiff's patent numbers. Defendant owns and operates a web site that promotes the Bontrager wheels and depicts with animation the benefits of the paired spoke technology used in those wheels.

OPINION

A. *Effect of the 2001 Settlement Agreement*

The initial dispute in this case concerns the effect of the September 25, 2001 settlement agreement that disposed of *Trek Bicycle Corp. v. Dietrich,* case no. 01–C–120–C. The settlement agreement provides that its terms are to be interpreted

according to Wisconsin law, as does the patent license agreement entered into as part of the settlement, at least insofar as federal law does not apply. *See* Affid. of Rolf Dietrich, dkt. # 11, at ex. E, settlement agreement ¶ 19, license agreement ¶ 8.4.

Paragraph 2.3 of the settlement's patent license provides that "[a]ll Products that embody the inventions claimed by" the '544 patent that are made or sold by defendant "shall have affixed to the Product a label or other marker identifying" the '544 patent's number. The term "Product" is defined to include bicycle wheels and wheel components. *See* Affid. of Rolf Dietrich, dkt. # 11, at ex. E, license agreement ¶ 1.1. It is undisputed that defendant is not currently marking its Bontrager wheels with the number of the '544 patent. Accordingly, plaintiff argues, in determining whether defendant breached the settlement agreement the only question to be resolved is whether defendant's Bontrager wheels embody the invention claimed in the '544 patent. However, defendant argues that whether the Bontrager wheels embody the invention recited in the '544 patent was "precisely the claim that [plaintiff] released in the prior litigation with [defendant]." Dft.'s Br. in Opp'n to Plt.'s Summ. J. Mot., dkt. # 19, at 11. Defendant invokes the settlement agreement's release clause, which provides that plaintiff fully releases defendant "from all claims . . . in any court or in any manner, which [plaintiff] now has or claims to have, or which may hereafter accrue . . . arising or growing out of any event occurring at any time before the date hereof, including . . . all claims and demands arising or growing out of those identified in" case no. 01–C–120–C "or any cause of action set forth or which could have been set forth" in that case. I must decide whether the release demonstrates that the parties did not intend

paragraph 2.3 to apply to Bontrager wheels manufactured after the parties' settlement agreement became effective on September 25, 2001.

 "In Wisconsin, courts are to construe settlement agreements and other forms of releases as contracts." *United States v. Ettrick Wood Products, Inc.*, 916 F.2d 1211, 1219 (7th Cir.1990). "When the language of a contract is unambiguous, [a court will] apply its literal meaning." *Wisconsin Label Corp. v. Northbrook Property and Casualty Insurance Co.*, 233 Wis.2d 314, 328, 607 N.W.2d 276, 282 (2000). "Whether a contract is ambiguous is a question of law." *Id.* Paragraph 2.3 of the 2001 patent license is unambiguous on its face. It requires defendant to mark bicycle wheels that embody the invention claimed in the '544 patent with that patent's number. However, defendant argues essentially that the settlement agreement's release clause injects ambiguity into paragraph 2.3's otherwise straightforward requirement. Under Wisconsin law, the intentions of the parties to a release are relevant to the release's scope and effect. *Brown v. Hammermill Paper Company*, 88 Wis.2d 224, 233–34, 276 N.W.2d 709, 713 (1979). "The intent of the parties must be sought from the whole and every part of the instrument and from the surrounding conditions and circumstances." *Id.* Generally, the "intent of the parties to a release and [ ] the scope of the release [are] question[s] of fact for the trier of facts." *Id.* However, "if the surrounding facts are undisputed, the release's scope is a legal question for the court (and thus a proper question for a court to decide by summary judgment)." *Ettrick*, 916 F.2d at 1219.

As an initial matter, defendant incorrectly conflates a patent infringement claim with a claim for breach of the settlement

agreement. Defendant argues repeatedly in its briefs that plaintiff "has already waived and released any claim that Bontrager-branded road wheels *infringe* or are 'covered by' the '544 patent." Dft.'s Br. in Opp'n to Plt.'s Summ. J. Mot., dkt. # 19, at 11 (emphasis added); *see also id.* at 12 (same); Dft.'s Reply Br., dkt. # 44, at 15 (referring to plaintiff's "claims for infringement"); *id.* at 17 (same). To the extent that defendant argues that plaintiff cannot maintain an infringement action against it, it is correct, not least because the settlement agreement provides defendant with a perpetual non-exclusive, nonterminable license to the '544 patent. *See* Affid. of Rolf Dietrich, dkt. # 11, at Exh. E, license agreement, at 2 & ¶ 2.1. But plaintiff is not asserting a patent infringement claim against defendant. Rather, plaintiff is asserting a contract claim grounded on defendant's alleged breach of the settlement agreement. In the patent license, defendant accepted from plaintiff a broad license to "manufacture, make, have made, import, export, use, sell, lease, install, dismantle and otherwise deal in Products that fall within the scope of" the '544 patent. Immediately thereafter, in paragraph 2.3, defendant agreed to mark all such products with the '544 patent's number. Plaintiff's claim is simply that defendant has not followed through on its contractual marking commitment. It is true that plaintiff's contract claim requires the court and the parties to refer to patent law to determine whether a particular product embodies the inventions claimed in the '544 patent, but that does not convert plaintiff's contract claim into one for patent infringement, which would be futile in light of the license.

Nevertheless, the settlement agreement's release applies to "all claims" that plaintiff has "*or which may hereafter accrue* ... arising or growing out of any event occurring at any time *before the date*

*hereof.*" Plaintiff's breach of contract action would be barred it if is a claim that arose out of an event that transpired before September 25, 2001, even if the claim itself did not accrue until after that date. Courts have construed releases like the one at issue in this case broadly. *See Augustine Medical Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367 (Fed.Cir.1999). *Augustine* was a patent infringement suit. Several years before the infringement suit, the same parties had litigated a case involving deceptive trade practices, unfair competition and other claims. Although patent infringement was not an issue in the first suit, both suits revolved around the defendant's convective warming blankets. *Id.* at 1369. The parties eventually settled the first suit. In the settlement agreement, the plaintiff released the defendant from any claims that "its owners ... have, have had, or may have" against the defendant "relating to any acts ... on or before the date of" the settlement agreement. Several months after the settlement agreement took effect, the plaintiff sued the defendant again, this time for patent infringement. The defendant argued that the settlement agreement reached in the first suit barred the plaintiff's infringement claim, and the court of appeals agreed. Noting that the case was one of first impression, the court of appeals viewed its task as determining "whether the language as drafted by [the parties] functions as a bar to any future claims of [plaintiff] for patent infringement occurring after the Settlement Agreement, related to those goods that were included in the Settlement Agreement." *Id.* at 1370–71.

The court of appeals concluded that the settlement agreement's reference to claims that the parties "may have" covered future claims between the parties. The plaintiff argued "that the phrase ... 'may have' is

restricted by the phrase which appears later in the same paragraph, 'on or before the date of the Settlement Agreement,'" because "a claim could not have existed on or before the date of the Settlement Agreement because the post-settlement patent infringement had not yet occurred." *Id.* at 1371. The court of appeals rejected this argument as "unduly emphasizing the role of the settlement date clause." *Id.* The settlement agreement released not just claims that existed on or before the date of the settlement agreement, but also future claims "relating to any acts" that occurred before the date of the agreement. *Id.* Because the same warming blankets were at issue in both suits, the court of appeals concluded that the plaintiff's "claims for patent infringement [were] undeniably *related to*" acts that occurred before the settlement agreement took effect. *Id.*

Although there are similarities between this case and *Augustine*, the two are clearly distinct. In particular, in *Augustine*, the court of appeals noted that "it is the burden of the parties entering into a settlement agreement to expressly reserve in the agreement any rights that they wish to maintain beyond the date of the settlement agreement." *Id.* at 1373. In *Augustine*, the plaintiff failed to do that, but in this case, it is precisely what plaintiff did. The settlement agreement's patent license expressly and unambiguously requires defendant to mark with the patent number any wheels it makes that embody the invention disclosed in the '544 patent. *Augustine* would be on all fours with the present case only if the plaintiff in that case had expressly reserved in the settlement agreement a right to exclude its claim for patent infringement from the scope of the settlement. Indeed, in *Augustine*, the plaintiff allegedly tried to negotiate just such a provision, but when its efforts were rebuffed, chose to sign the agreement anyway. *Id.* at 1369. By contrast, the settlement agreement at issue specifically includes a forward-looking marking requirement. Defendant argues that "before [plaintiff] can ... arrive at the concept that he has a new and non-released 'right' to force [defendant] to mark its current Bontrager Wheels with the '544 patent's number, [he] must point to some actual contractual language or intent of the parties, not just attorney argument, that supports that view." Dft.'s Reply Br., dkt. # 44, at 5. I conclude that paragraph 2.3 of the patent license agreement contains that contractual language evidencing that intent. It unambiguously applies the marking requirement to *"All Products* that embody the inventions" claimed by the '544 patent. (Emphasis added). It is defendant who has failed to demonstrate that "all products" really means "all products except Bontrager wheels." Accordingly, I conclude that plaintiff is not precluded by the settlement agreement's release from bringing a breach of contract claim against defendant for violating paragraph 2.3 of the 2001 patent license agreement by failing to mark its Bontrager wheels after the settlement's September 25, 2001 effective date.

■ In addition, I will grant plaintiff's *motion to strike those portions of defendant's reply brief in which defendant argues that the settlement agreement's marking provision was not supported by consideration.* Defendant raised this argument for the first time in its reply brief. Because this argument should have been *raised earlier or not at all, I will not consider it. See Eby–Brown Co. v. Wisconsin Dept. of Agriculture,* 213 F.Supp.2d 993, 1011 (W.D.Wis.2001) (citing *James v. Sheahan,* 137 F.3d 1003, 1008 (7th Cir. 1998)).

■ Although plaintiff's breach of contract claim is not precluded by the settlement agreement's release clause, I conclude that several of the defenses defendant has asserted are. Defendant argues that it should not have to mark its Bontrager wheels with the '544 patent's number because that patent is invalid. But this is the very claim that defendant asserted when it sued plaintiff in case no. 01–C–120–C and which was released by the parties' settlement agreement. Indeed, in its brief supporting its motion for summary judgment in this case, defendant simply refers the court to the brief it filed on this issue in case no. 01–C–120–C. *See* dkt. #20, at 18 ("As set forth in detail in Trek's motion for summary judgment in the prior litigation, which Trek respectfully incorporates by reference herein, the '544 patent is invalid ...."). The settlement agreement's release precludes defendant from raising in the context of this suit any claim it litigated and settled in case no. 01–C–120–C because defendant never reserved the right to revisit the issue of the '544 patent's validity in subsequent litigation. The same is true of defendant's argument that the '544 patent has expired and is therefore unenforceable. As plaintiff notes, defendant has simply cut this argument from its summary judgment brief in case no. 01–C–120–C and pasted it into its summary judgment brief in this case. *Compare* Trek's Mem. of Law in Supp. of its Mot. for Summ. J. of Invalidity and Unenforceability in case no. 01–C–120–C, at 30–33, included in the Decl. of William A. Rakoczy, dkt. #25, at ex. L *with* Dft.'s Br. in Opp'n to Plt.'s Summ. J. Mot., dkt. #19, at 7–11. The parties' settlement agreement bars defendant from revisiting this claim "in any court or in any manner." *See* Affid. of Rolf Dietrich, dkt. #11, at ex. E, settlement agreement ¶ 13.

To summarize, the settlement agreement's release does not bar plaintiff's claim that defendant has breached the agreement's express requirement that it mark all of its wheels that embody the invention of the '544 patent. However, defendant is barred by the terms of the release from arguing that the '544 patent is invalid, has expired or is otherwise unenforceable. Therefore, the only question that remains to be resolved is whether defendant's Bontrager wheels embody the invention claimed in the '544 patent.

### B. *Defendant's Wheels and the '544 Patent*

#### 1. *Claim preclusion*

■ Plaintiff argues that claim preclusion bars defendant from disputing that its Bontrager Wheels embody the invention disclosed in the '544 patent. Plaintiff's argument goes something like this: Case no. 01–C–120–C was dismissed with prejudice when the parties agreed to a settlement, a result that operates as a judgment on the merits. *See Hallco Mfg. Co., Inc. v. Foster*, 256 F.3d 1290, 1297 (Fed.Cir.2001). That case was initiated by defendant, which sought a declaratory judgment that the '544 patent is invalid. In a declaratory judgment action for invalidity, the issue of invalidity "is but an anticipatory defense." *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 479 (Fed.Cir.1991). The "claim" in the declaratory judgment action for claim preclusion purposes is really the patent owner's anticipated charge of infringement. *Id.* Therefore, claim preclusion would bar any subsequent suit between the parties to the settlement agreement alleging invalidity of the '544 patent or infringement of the '544 patent by any device that is "essentially the same" as the device at issue in the earlier litigation. *Id.* at 479–80. Plaintiff maintains that the Bontrager wheels at issue in this case are

essentially the same as the wheels at issue in case no. 01–C–120–C. Further, plaintiff argues, in addition to its anticipatory invalidity and unenforceability defenses, defendant could have raised the defense of non-infringement in the 2001 litigation, but it did not. Because claim preclusion applies to any defenses "that were raised or could have been raised in" the prior action, defendant's failure to assert a defense of non-infringement in that suit essentially operates as an admission of infringement, precluding defendant from asserting in this suit that the Bontrager wheels do not embody (that is, do not infringe) the invention disclosed in the '544 patent. *Hallco*, 256 F.3d at 1294.

 I am not persuaded by plaintiff's argument. Plaintiff notes in his briefs that his "claim for breach of the 2001 settlement agreement and Patent License is a different claim from those litigated in 2001, because he seeks to enforce a contractual right not in existence at the time of the 2001 litigation" and therefore "it would have been impossible for [plaintiff] to assert his breach of contract claim in the previous litigation." Plt.'s Br. in Resp. to Dft.'s Summ. J. Mot., dkt. # 39, at 8, 13. Indeed, plaintiff maintains that he "is not making any claim against [defendant] based on ... any event occurring before September 25, 2001." *Id.* at 13 (emphasis added). Claim preclusion requires an identity of claims or causes of action and "two claims are one for purposes of [claim preclusion] if they are based on the same, or nearly the same, factual allegations." *Herrmann v. Cencom Cable Associates, Inc.*, 999 F.2d 223, 226 (7th Cir.1993). As plaintiff's own assertions make clear, this is not a situation in which the parties are relitigating the same cause of action (that is, the same set of underlying factual allegations) under the rubric of a different legal theory. At the

time the first case was litigated, the factual predicates for this suit did not exist. The parties had no settlement agreement; defendant had no prospective marking obligation; and no one knew how defendant would behave in the wake of the settlement. Therefore, the claim at issue in this case is not based on factual allegations that are identical or nearly identical to those underlying case no. 01–C–120–C. Plaintiff's claim preclusion argument is a non-starter. *See, e.g., Jet, Inc. v. Sewage Aeration Systems*, 223 F.3d 1360 (Fed.Cir. 2000) (for claim preclusion purposes, claim for trademark infringement was not based on same set of factual allegations as petition to cancel same trademark's federal registration). It is true that in both the instant breach of contract suit and the earlier infringement action, there is a significant question whether particular wheels embody the invention disclosed in the '544 patent. In theory, this might give rise to an argument for issue preclusion, as opposed to claim preclusion. Where applicable, issue preclusion "prevents a party from relitigating an issue that it has previously litigated and lost." *Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir.2002). But plaintiff does not argue that issue preclusion applies, perhaps because of the general rule that issue preclusion does not arise unless an issue has been actually, fully and fairly litigated rather than short-circuited by a consent judgment. *Foster*, 947 F.2d at 480. Accordingly, I conclude that defendant is not precluded from contesting the issue whether its Bontrager wheels embody the invention disclosed in the '544 patent.

### 2. *Claim construction and infringement analysis*

 Although this is a breach of contract case, a traditional patent infringement analysis is required in order to determine whether defendant's Bontrager

wheels embody the invention disclosed in the '544 patent. If they do, defendant has breached the contract by failing to mark its Bontrager wheels with the '544 patent's number. Infringement analysis involves a two-step process. First, the court interprets the patent claims to determine their meaning and scope. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 967 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Second, the properly construed claims are compared to the device accused of infringement. *Id.* The first step, claim construction, is a question of law. By contrast, infringement analysis is a question of fact. *Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed.Cir.1999). A device literally infringes a patent claim if it contains every limitation of that claim. *Id.*

From the parties' briefs and proposed findings of fact, it appears that claim 5 is the only claim of the '544 patent relevant to the parties' dispute. The relevant language of claim 5 describes a bicycle wheel comprising

> a given number of pairs of first and second spokes, each of said spokes having a first and a second end connected to one of said hub flanges and to said rim, respectively, so that tension is applied by said first spokes between the first hub flange and a first plurality of points which are circumferentially spaced substantially evenly around the rim and so that tension is applied by said second spokes between the second hub flange and a second plurality of points on said rim each of which is adjacent to but circumferentially offset at least about 0.3 inch from the adjacent one of said first plurality of points.

It is undisputed that defendant's Bontrager wheels employ paired spoke technology; they have a rim and a hub with two flanges, each on opposite sides of the wheel center plane; and at the rim, the distance between the paired spokes is approximately one inch each. The parties dispute only the proper construction of a single phrase in claim 5. Specifically, the parties ask the court to determine the meaning and scope of the term "circumferentially offset at least about 0.3 inch."

Although the parties debate the proper construction of the circumferentially offset term in their summary judgment briefs, each party argues essentially that it has been ambushed by the other with respect to the arguments and evidence adduced on this issue. This is likely a result of the unusual nature of this case, which requires an infringement analysis as part and parcel of a breach of contract claim, all set against the backdrop of a broad release clause related to the patent in issue. Because I have concluded that plaintiff's breach of contract claim is not barred by the release but that defendant's patent invalidity and unenforceability defenses are, all that remains to be determined is (1) the meaning of the term "circumferentially offset at least about 0.3 inch" in claim 5 of the '544 patent and (2) whether, on the basis of the proper definition of that term, defendant's Bontrager wheels embody claim 5 of the '544 patent. As to the first issue, a claim construction hearing would be helpful in construing the meaning of the disputed term. The hearing will take place on Thursday, June 19, 2003, at 9:00 a.m. If they wish, the parties may submit a short claim construction brief regarding the proper construction of the term "circumferentially offset at least about 0.3 inch" no later than Friday, June 13, 2003.

Also related to the issue of claim construction is plaintiff's motion to strike the declaration of defendant's expert, Jobst Brandt, dkt. # 48. Plaintiff argues that to the extent Brandt discusses the validity of

the '544 patent, the declaration was not timely disclosed. Because I have concluded that defendant cannot raise the issue of the '544 patent's validity as a defense to plaintiff's contract claim, this issue is moot. To the extent plaintiff maintains that he has never had the opportunity to respond to Brandt's declaration, he may do so in his claim construction brief if he deems it necessary. Accordingly, I will deny plaintiff's motion to strike Brandt's declaration. I will consider the declaration for what it is worth in light of the principles and rules of claim construction. I note also that although defendant may not assert the invalidity of the '544 patent as a defense to plaintiff's contract claim, it is free to argue in support of its proposed claim construction that plaintiff's proposed construction would raise validity questions.

Once the court has issued its claim construction ruling, this case will proceed to trial on July 28, 2003. At trial, plaintiff will be required to prove that defendant's wheels embody the invention disclosed in the '544 patent, as defined by the court. If plaintiff is successful in this endeavor, the jury will then consider damages.

### ORDER

IT IS ORDERED that

1. The motion for summary judgment of defendant Trek Bicycle Corporation is DENIED. The parties' settlement agreement does not bar plaintiff's claim for breach of the patent license that the parties entered into as part of the agreement settling their earlier suit. Further, the settlement agreement's release bars defendant from challenging the validity and enforceability of plaintiff's patent.

2. The motion for summary judgment of plaintiff Rolf Dietrich is DENIED. The doctrine of claim preclusion does not bar defendant from contesting the issue whether its bicycle wheels embody the in- vention disclosed in plaintiff's patent. This question will be determined by a jury after the court has construed as a matter of law the term "circumferentially offset at least about 0.3 inch" in plaintiff's patent.

3. Plaintiff's motion to strike those portions of defendant's reply brief in which defendant argues that the settlement agreement's marking provision was not supported by consideration is GRANTED.

4. Plaintiff's motion to strike the declaration of defendant's expert, Jobst Brandt, is DENIED.

5. A claim construction hearing in this case will take place on Thursday, June 19, 2003, at 9:00 a.m. If they wish, the parties may submit a short claim construction brief regarding the proper construction of the term "circumferentially offset at least about 0.3 inch" no later than Friday, June 13, 2003.