RAYTHEON COMPANY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 05–448C.

United States Court of Federal Claims.

Jan. 26, 2011.*

* ORDER  ORIGINALLY  FILED  UNDER  SEAL       ON JANUARY 19, 2011

Karen L. Manos, Washington, DC, for plaintiff. Christyne K. Brennan, Washington, DC, of counsel.

C. Coleman Bird, Washington, DC, with whom were Assistant Attorney General Tony West, and Director Jeanne E. Davidson, for defendant. Lawrence S. Rabyne, Defense Contract Management Agency, Arlington Heights, IL, of counsel.

ORDER GRANTING–IN–PART AND DE-NYING–IN–PART DEFENDANT'S MO-TION FOR SUMMARY JUDGMENT

NANCY B. FIRESTONE, Judge.

Pending before the court is the motion of the defendant, the United States, seeking summary judgment on the following four issues: 1) whether the plaintiff's ("Raytheon's") claims for recovery of a segment closing adjustment following the closing of its Optical, Printed Wire Fabrication ("PWF"), Aerospace, and Aircraft Integration Systems ("AIS") segments are barred in their entirety because Raytheon did not fund the subject segment closing adjustments before seeking payment; 2) whether the Limitation of Cost and Limitation of Funds clauses limit Raytheon's recovery because Raytheon did not provide notice under these clauses; 3) whether Raytheon waived its segment closing claims relating to the Optical and AIS segments in the novation agreements Raytheon signed when Raytheon sold these segments; and 4) whether the defendant is entitled to an equitable adjustment with regard to a portion of the closed segments' deficit that is greater under the revised Cost Accounting Standards ("CAS") than it would have been for contracts entered into under the original CAS.

For the reasons that follow, the defendant's motion is **GRANTED–IN–PART** and **DENIED–IN–PART.**

## I. STATEMENT OF FACTS

The following facts are not disputed. Raytheon has submitted four claims for a segment closing adjustment under CAS 413.50(c)12 relating to its closing of four segments: (1) Optical Systems on March 1, 2001, for $13,816,382; (2) PWF on April 21, 2001 for $1,124,366; (3) Aerospace on June 8, 2001 for $2,901,507; and (4) AIS on March 8, 2002 for $68,570,448. Raytheon does not dispute that it has not fully pre-funded all of the amounts it seeks to recover from the government. Raytheon contends that as a matter of law it was not obligated to pre-fund the pension costs it seeks. In addition, Raytheon does not dispute that it never gave the government notice under the provisions of the Limitation of Cost clause, 48 C.F.R. § 52.232–20(b), or Limitation of Funds clause, 48 C.F.R. § 52.232–22(c), regarding the segment closing adjustment amounts it now seeks from the government. Raytheon contends that as a matter of law it was not obligated to provide such notices. Further, it is not disputed that the government never allotted any additional funds to any Raytheon contract to cover all or part of the amounts of any of the subject segment closing adjustments.

Finally, it is not disputed that novation agreements were entered into in connection with the Raytheon sale of the Optical segment to B.F. Goodrich Company on March 7, 2001 and the Raytheon sale of the AIS segment to L–3 Communications Integrated Systems on March 8, 2002. ("Optical Novation Agreement" and "AIS Novation Agreement," respectively). The novation agreements covered all contracts between Raytheon and the United States relating to the Optical and AIS segments, both the contracts that were transferred and those that had been completed.[1] Each novation agreement included a proviso that stated, "Raytheon ... waives any claim and rights against the Government that it now has or may have in the future in connection with the [completed and transferred] contracts."

---

1. The term "the contracts" is defined in the novation agreements to mean the following:

[contracts and purchase orders as shown in the attached lists marked "EXHIBIT A"] and all other contracts and purchase orders, including all modifications, made between the Government and [Raytheon] before the effective date of this Agreement (whether or not performance and payment have been completed and releases executed if the Government or [Raytheon] has any remaining rights, duties, or obligations under these contracts and purchase orders). Included in the term "the contracts" are also all modifications made under the terms and conditions of these contracts and purchase orders between the Government and the Transferee [B.F. Goodrich or L–3 Communications, respectively], on or after the effective date of this Agreement.

Optical Novation Agreement 1–2; AIS Novation Agreement 1.

Optical Novation Agreement 3; AIS Novation Agreement 1.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c)(1) of the Rules of the United States Court of Federal Claims. A material fact is one that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In ruling on a motion for summary judgment, all reasonable inferences must be resolved in favor of the nonmoving party. *Id.* at 269, 106 S.Ct. 2505.

## III. DISCUSSION

### A. The Funding Requirements of the FAR and CAS Do Not Apply to a Segment Closing Adjustment Claim.

■ The government argues that all of Raytheon's claims are barred because Raytheon failed to fully fund the segment closing adjustments as required by FAR Pension Cost Rules and CAS 412. This court has previously considered and rejected the government's argument that funding is a prerequisite to a segment closing adjustment claim in *General Motors Corp. v. United States*, 66 Fed.Cl. 153 (2005) and *Viacom, Inc. v. United States*, 70 Fed.Cl. 649 (2006). In these prior rulings, the court held that because the CAS 413 segment closing adjustment is not a pension cost, the FAR cost principles for pension costs and CAS 412 regarding the funding of pension costs do not apply.

The government has not provided the court with any reason to revisit its previous rulings. Rather, it has repeated the same arguments that this court has previously rejected in the other CAS 413 cases involving a deficit following a segment closing adjustment. The court rejects the government's motion for summary judgment based on this argument for the reasons set forth in *General Motors* and *Viacom*.

### B. The FAR's Limitation of Cost and Limitation of Funds Clauses Do Not Limit Raytheon's Recovery of Its Segment Closing Claim.

■ In *General Motors* and *Viacom* this court also rejected the same arguments regarding the applicability of the Limitation of Cost and Limitation of Funds clauses that the government makes in this case. In those cases, the court determined that these clauses do not bar recovery, because the CAS 413 segment closing adjustment represents an adjustment of previously determined pension costs and does not increase contract-specific costs. *See General Motors*, 66 Fed.Cl. at 160; *Viacom*, 70 Fed.Cl. at 661. In addition, the court held that even if those clauses were deemed to apply, there are well-recognized exceptions to the application of these rules that would apply in these CAS 413 segment closing adjustment cases. *Viacom*, 70 Fed. Cl. at 658.

Once again the government has not provided the court with any new arguments that would lead it to reconsider its prior rulings. Thus, the government's motion for summary judgment based on the FAR's Limitation of Cost and Limitation of Funds clauses is denied for the same reasons that summary judgment was denied in *General Motors* and *Viacom*.

### C. Disputed Issues of Fact Preclude Summary Judgment on Whether Raytheon Waived Its Claims for the Optical and AIS Segment Closing Adjustments Based on the Novation Agreements Raytheon Entered into with the Government and the Buyers of Each Segment.

■ It is not disputed that in the Optical and AIS novation agreements, signed by Raytheon, B.F. Goodrich, L-3 Communications (respectively), and the government, Raytheon agreed to waive "any claim and rights against the Government that [Raytheon] now has or may have in the future in connection with the contracts," the government had with each segment. The government argues based on the plain language of these agreements that Raytheon has waived any claims for the segment closing adjust-

ments it now seeks to recover from the government in this case.

Raytheon argues in response that the "release or waiver of claims" provisions in these novation agreements do not extend to the CAS 413 segment closing adjustments associated with the portions of the pension plans that Raytheon has retained with respect to Optical and AIS employees. Raytheon contends that the releases set forth in the novation agreements extend only to contracts and the CAS 413 segment closing adjustment is not contract specific. Raytheon includes in its opposition to the motion for summary judgment the Declaration of Deborah A. Tully, to which she attaches Raytheon's "Demand for a Contracting Officers' Final Decision" with regard to the segment closing adjustments for Optical and AIS. The subject correspondence, dated November 8, 2004 (for Optical) and January 24, 2005 (for AIS), reflect the government and Raytheon's continued negotiations over the CAS 413 segment closing adjustments for both segments. Raytheon has also attached the Asset Sale Agreements, which provide by their terms that Raytheon retained the pension assets and liabilities for the closed AIS and Optical segments. According to Raytheon, the CAS 413 segment closing adjustments were always intended to be handled outside of the novation process.

The government argues that the affidavit and documents provided by Raytheon in response to summary judgment are not sufficient to raise a genuine issue of material fact. The government further contends that there is no "tension between enforcing the novation agreements and enforcing CAS 413." Def.'s Reply at 15. The government asserts that Raytheon was free to waive its CAS 413 claims and did so by not reserving its CAS 413 claims against the government. CAS 413 segment closing claims, the government contends, are "in connection with contracts," and are covered by the releases in the novation agreements.

■ As a general rule, a contractor that has executed a release (without a reservation of claims) is barred from seeking compensation for such claims based on events that occurred before the execution of the release.

*B.D. Click Co., Inc. v. United States,* 614 F.2d 748, 756 (Ct.Cl.1980). "Because a release is contractual in nature, it is interpreted in the same manner as any other contract term or provision." *Bell BCI Co. v. United States,* 570 F.3d 1337, 1341 (Fed.Cir.2009). Only in the event of an ambiguity may the court examine extrinsic or parol evidence. *Id.* The court looks to the plain language of the release, and if the provisions are clear and unambiguous, attributes to it the plain and ordinary meaning. *Id.* (citing *McAbee Constr., Inc. v. United States,* 97 F.3d 1431, 1434 (Fed.Cir.1996)).

■ In this case, the language of the novation agreements expressly waived "any claim and rights against the Government that [Raytheon] now has or may have in the future in connection with the contracts" the government had with each segment. There is nothing ambiguous about this release language, and the language includes no reservation of any claim or rights Raytheon had or may have had "in connection" with the contracts the government had with each segment. Therefore, absent some vitiating circumstance, the contractor cannot maintain any claim against the government subject to the release. *See Inland Empire Builders, Inc. v. United States,* 424 F.2d 1370, 1376 (Ct.Cl.1970); *Augustine Medical, Inc. v. Progressive Dynamics, Inc.,* 194 F.3d 1367, 1373 (Fed.Cir.1999) ("[A]bsent special vitiating circumstances, a general release bars claims based upon events occurring prior to the date of the release. And no exception to this rule should be implied for a claim whose facts were well enough known for the maker of the release to frame a general description of it and request an explicit reservation." (quoting *Johnson, Drake & Piper, Inc. v. United States,* 531 F.2d 1037, 1047 (Ct.Cl.1976))).

■ There are, however, some special and extremely limited circumstances that will vitiate an executed and otherwise effective release. *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1395 (Fed.Cir.1987). These include "where the conduct of the parties in continuing to consider a claim after execution of the release makes plain that the [parties] never construed the release as con-

stituting the abandonment of the claim." *J.G. Watts Constr. Co. v. United States,* 161 Ct.Cl. 801 (1963) (citing *Winn–Senter Constr. Co. v. United States,* 110 Ct.Cl. 34, 65–66, 75 F.Supp. 255 (1948)).

█ In this case, the court finds that Raytheon's evidence of continued negotiations regarding the CAS 413 segment closing adjustment after execution of the release may be sufficient to show that its claims for the Optical and AIS segments are not barred by the waiver of claims provisions in the subject novation agreements. The correspondence attached to Ms. Tully's affidavit points to actions by the government and Raytheon that are not consistent with the release and raise a genuine issue of material fact regarding whether the releases should be vitiated with regard to the CAS 413 segment closing claims. Accordingly, the government's motion for summary judgment based on the novation agreements is denied. A trial will be required to determine whether the conduct of the parties has been sufficient to vitiate the release with regard to Raytheon's CAS 413 segment closing claims for the Optical and AIS segments.

**D. The Government Is Entitled to an Equitable Adjustment to the Extent That Application of the Revised CAS 413 Results in the Government Owing More Under the Revised CAS for Pension Costs Attributable to Pension Costs Arising Under Original CAS Contracts.**

█ In *Viacom,* the court held as follows: [I]n order to ensure that the long-standing expectations of the parties are maintained, regardless of whether a segment closing under the revised CAS 413 results in a surplus or a deficit, an equitable adjustment is required. As the Federal Circuit held in [*Allegheny Teledyne, Inc. v. United States,* 316 F.3d 1366 (Fed.Cir.2003) ], the terms of the contracts determine the extent of recovery. 316 F.3d at 1379. Therefore, where the pension costs are attributable to contracts that were entered into before the effective date of the revised CAS 413, either the contractor or the government is entitled to an equitable adjust-

ment to the extent that the contractor or the government is liable for more under the revised CAS 413 than they would have been liable for under the original CAS 413.

*Viacom,* 70 Fed.Cl. at 663. As the court stated, the purpose of an equitable adjustment under CAS Clause 48 C.F.R. § 52.230–2(a)(4)(i) "is to prevent a windfall to either side based on a CAS change that alters prior expectations. The CAS clause is not designed to protect contractors, but to protect the integrity of the contracting process by protecting the expectations of the parties." *Id.* at 664.

Raytheon has not provided the court with any reason to revisit its previous ruling. Raytheon argues that "when the government itself changes the [cost accounting] rules that apply to its contracts, it should not be heard to complain that the change upsets its expectations." Pl.'s Resp. 18. Raytheon also argues that so long as the segment closing adjustment involves contracts entered into after the effective date of the revised CAS there is no reason for an equitable adjustment.

█ The purpose of the equitable adjustment is to ensure that the revised CAS 413 does not increase the amount the government or a contractor owes to the other with respect to a segment's surplus or deficit attributable to pension costs that were subject to the original CAS 413 prior to the 1995 revisions. The fact that the parties entered into contracts after 1995 does not mean that they agreed to apply the revised CAS 413 to pension costs arising under the original CAS 413. The court in *Viacom* rejected this same argument, when it held that the purpose of the equitable adjustment was to maintain the expectations of the parties based upon when the costs arose. *See Viacom,* 70 Fed.Cl. at 663.

The fact that the government changed the accounting rules does not alter this result. The equitable adjustment applies whenever "contract cost is affected." FAR 52.230–2(a)(4)(i), 48 C.F.R. § 52.230–2(a)(4)(i) (2001). The equitable adjustment was not written only for the protection of contractors. The adjustment ensures that expectations of both

parties are maintained. Raytheon's arguments to the contrary are rejected. The government is entitled to summary judgment on this claim.

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** the government's motion for summary judgment on the issue of whether the defendant is entitled to an equitable adjustment. The court **DENIES** the government's motion for summary judgment on the issues of 1) whether Raytheon's claims are barred by the funding requirements of the FAR and CAS; 2) whether Raytheon's recovery is limited under the FAR's Limitation of Cost and Limitation of Funds clauses; and 3) whether Raytheon's segment closing claims relating to the Optical and AIS segments were waived in the novation agreements Raytheon signed when Raytheon sold these segments.

In accordance with the court's denial of the government's motion for summary judgment based on the novation agreements, at trial and in their pre-trial memoranda the parties shall address the question of whether the conduct of the parties has been sufficient to vitiate the releases in the novation agreements with regard to Raytheon's CAS 413 segment closing claims for the Optical and AIS segments.[2]

**IT IS SO ORDERED.**

---

**2.** While the parties were given an opportunity to recommend redactions, on January 25, 2011 the plaintiff filed a motion for reconsideration. In its motion, the plaintiff argues that the court's holding that the novation agreements could result in a waiver of the plaintiff's segment closing adjustment claim is contrary to the Federal Circuit decision in *Gates v. Raytheon Co.*, 584 F.3d 1062 (Fed.Cir.2009) and that *Gates* also bars the government's claim for an equitable adjustment. The motion is **DENIED.**

First, the plaintiff's argument that *Gates* bars the conclusion that the general release contained in the standard novation agreement applies to a segment closing adjustment claim was raised for the first time at oral argument and was thereby waived. *Warren v. Office of Personnel Management*, 407 F.3d 1309, 1317 (Fed.Cir.2005). The court need not consider new arguments raised for the first time at oral argument. *L–3 Global Commc'ns Solutions, Inc. v. United States*, 82 Fed.Cl. 604, 611 (2008) (citing *Arakaki v. United States*, 62 Fed.Cl. 244, 246 n. 9 (2004) ("The court will not consider arguments that were presented for the first time in a reply brief or after briefing was complete."); *Res. Recycling Corp. v. United States*, 56 Fed.Cl. 612, 618 (2003) (noting that "courts are rightfully loathe to allow a party to raise an issue at oral argument for the first time because there is a lack of notice to the court and adversary")). While the plaintiff had argued that the subject releases did not extend to a segment closing adjustment claim because a segment closing adjustment was not contract-specific, it did not argue that *Gates* compels this result. Moreover, the court concludes that its holding with regard to the release is not contrary to the holding in *Gates*. As the court discussed, the release in the subject novation agreements extended beyond individual contracts and included within its ambit all claims "in connection with contracts." A segment closing adjustment claim is plainly a claim "in connection with contracts." Indeed, the government noted in its briefs that other government contractors include an exception for the segment closing adjustment in the novation agreement to avoid the situation Raytheon now faces. Def.'s Reply 15. There is nothing in the Federal Circuit's holding in *Gates* that leads the court to revisit its holding with regard to the scope of the novation agreements. Raytheon's motion for reconsideration on this issue is therefore denied.

Second, the plaintiff's claim that the court's holding with regard to the government's right to an equitable adjustment is contrary to *Gates* is also unfounded. The plaintiff argues based on the ruling in *Gates*, that individual contract terms are not relevant to a segment closing adjustment conducted under the revised CAS 413. However, the matter at issue in this case is different from the CAS 413 issue raised by *Gates*. In the present action, the court relied upon the Federal Circuit decision in *Allegheny Teledyne*, which held that an equitable adjustment is appropriate under the CAS, where "a government-mandated change in accounting practices is a change that results in increased or decreased costs that were not contemplated by the original contract." *Allegheny Teledyne*, 316 F.3d at 1384. Nothing in *Gates* undermines this holding. Rather, *Gates* dealt with the issue of CAS non-compliance and the payment of interest. *Gates*, 584 F.3d at 1069. There is no discussion in that decision of whether the "interest provisions" at issue gave rise to any change in accounting practices from one period to another. Rather, in *Gates*, Raytheon was seeking to limit its interest liability to only certain contracts "impacted by the noncompliance." *Id.* *Gates* did not address a change in accounting practices that was at

issue in *Allegheny Teledyne* and the court's prior rulings in *Viacom* and *GM*. Accordingly, the court's ruling is not contrary to *Gates* and the plaintiff's motion for reconsideration on this ground is also denied.