**PRESS MACHINERY CORPORATION,**
Appellee,

v.

**SMITH R.P.M. CORPORATION,**
Appellant.

No. 83–1245.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1983.

Decided Feb. 21, 1984.

James L. Burgess, Berry F. Laws III, Johnson, Lucas, Bush, Snapp & Burgess, Kansas City, Mo., for appellant.

Robert J. Campbell, Brown, Koralchik & Fingersh, Overland Park, Kan., for appellee; Brown, Koralchik & Fingersh, Kansas City, Mo., of counsel.

Before LAY, Chief Judge, HEANEY and ARNOLD, Circuit Judges.

LAY, Chief Judge.

Smith R.P.M. Corporation (Smith), a Missouri corporation, appeals from the district court's judgment that construed a settlement agreement between Smith and Press Machinery Corp. (PMC), an Illinois corporation. The court interpreted the settlement agreement as granting PMC a limited license under a patent subsequently issued to Smith.[1] For reversal, Smith argues that the district court erred in considering extrinsic evidence when interpreting the settlement agreement and in applying equitable estoppel to find a limited license for PMC.[2] We affirm.

Smith manufactures, markets and installs printing press equipment. In particular, Smith markets a system for converting newspaper letterpress presses to the offset method of printing. In 1978, Smith filed a patent application for its method of installing its press conversion system. In 1979, Smith contracted to install its system for the Los Angeles Times. Smith then subcontracted with DEV Industries, Inc. (DEV) to supply certain equipment for Smith's Los Angeles Times contract. The subcontract contained DEV's agreement not to compete with Smith for two years in the manufacture or sale of press conversion systems. Three months into the contract, however, DEV set up and incorporated PMC, hired Smith's chief engineer and its national sales manager, and thereafter entered the press conversion market in competition with Smith. PMC subsequently contracted with the Kansas City Star to install a press conversion system.

In July of 1980, Smith filed suit against its two former employees, PMC, and DEV, in a Missouri state court. Smith alleged violation of the two year restrictive covenant and sought damages and an injunction barring PMC from disclosing or using trade secrets or confidential information regarding Smith's press conversion system. Four days before trial, on July 16, 1981, the parties entered into a settlement agreement. The agreement purported to release the parties from "all claims, rights of action, causes of action and demands of every kind and character which the parties hereto now have or under any circumstances could or might have, against the other arising out of, resulting from or in any way pertaining to the agreements and matters referred to in [the pleadings]." The agreement also required PMC, *inter alia,* to make a cash payment of $20,000 to Smith upon execution of the agreement and monthly payments of $10,000 for two years. To protect its interests, Smith was given a security interest in PMC's rights to payment under

---

1. The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri, presiding. The court certified this ruling for interlocutory appeal. 28 U.S.C. § 1292(b).

2. Smith also argues that the district court order should be reversed because of its issuance without a formal hearing date having been set as mandated by Rule 56 of the Federal Rules of Civil Procedure. The grant of an additional hearing is within the trial court's discretion. Smith had extensive opportunities to argue and to present additional affidavits. Moreover, no prejudicial circumstances have been alleged. We find no abuse of discretion.

PMC's contract with the Kansas City Star. The financial arrangement was not made public; however, PMC insisted on the following public announcement:

The lawsuit captioned *Smith R.P.M. Corporation vs. DEV Industries, Inc., Press Machinery Corporation, et al.,* (No. CV–80–16649, Circuit Court of Jackson County, Missouri) has been terminated to the mutual satisfaction of the parties, leaving each party on its own to compete and sell letter press to offset conversion systems.

During the state court litigation, PMC allegedly was apprised of Smith's pending patent application for its method of installing its press conversion system. Smith received oral notification that its patent would be approved in April of 1981. However, during the settlement negotiations in July, the pending patent was not discussed, nor did the agreement make any specific reference to it. The settlement agreement was effectuated on July 16, 1981; Smith's method patent was issued on September 1, 1981. Smith then contacted persons at the Kansas City Star and informed them of Smith's patent. Smith also initiated a letter campaign warning persons who had contracted with PMC of the possibility that PMC was infringing Smith's patent. For reasons in dispute, the Star suspended performance of its contract with PMC. PMC then stopped making the payments to Smith that were mandated by the settlement agreement. This action followed.

PMC charges Smith with breach of the settlement agreement and seeks a declaratory judgment of noninfringement of Smith's patent. On PMC's motion for summary judgment, the district court found that PMC had a limited license under Smith's subsequently issued method patent and that Smith was equitably estopped from asserting its patent against PMC, at least regarding the completion of the Star contract.

On appeal, Smith contends that the release is a clear and unambiguous statement. Smith asserts that the reach of any general language in the agreement must be determined solely by reference to the matters specifically raised in the state court litiga-

tion. *Stutz v. Campbell,* 602 S.W.2d 874 (Mo.Ct.App.1980). Smith urges that because of the theoretical and remedial differences between the two actions, a patent infringement claim is distinct from an action premised on allegations of trade secret violations. Therefore, Smith argues, the court erred in finding that Smith released its right to assert its subsequently issued patent against PMC at the same time that Smith released it's trade secrets claims against PMC. Smith also contends that there was no finding that the document was ambiguous. Absent such a finding, Smith submits that the court erred in considering surrounding circumstances and the actions of defendants when interpreting the document. Smith also contends that if considered, the extrinsic evidence supports a finding that the parties had no intention of releasing Smith's potential patent rights.

Under Missouri law, normal rules of contract construction apply to interpretation of settlement agreements. *Roberts v. Browning,* 610 F.2d 528, 533 (8th Cir.1979). Crucial to the construction of the settlement agreement is the intent of the parties. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo.1973) (en banc). Whether a contract is ambiguous, is a question of law. If the court determines that there is no ambiguity, then the intention of the parties and interpretation of the contract is for the court to determine, as garnered from the four corners of the document. *Id.* Where a contract is ambiguous, use of extrinsic evidence for interpretation is proper; the resolution of the ambiguity is a question of fact to be determined by a jury. *Fitch v. Doke,* 532 F.2d 115, 117 (8th Cir.1976). In determining whether a contract is ambiguous, the court must consider the whole instrument and the natural and ordinary meaning of the language. Moreover, a mere difference of opinion as to the proper interpretation does not render the contract ambiguous as a matter of law. According to Missouri law, the court's role is to determine the intention as manifested not by what the parties now say they intended but by the document. In that inquiry, however, the court is justified in

considering more than the mere words of the contract. The surrounding circumstances at the time of contracting and the positions and actions of the parties are relevant to the judicial interpretation of the contract. *Cure v. City of Jefferson,* 380 S.W.2d 305, 310–11 (Mo.1964) (adopting Restatement (Second) of Contracts); Restatement (Second) of Contracts, §§ 202, 230, 235 (1981); *see also Phipps v. School Dist. of Kansas City,* 645 S.W.2d 91, 100 (Mo.Ct. App.1982); *Harris v. Union Elec. Co.,* 622 S.W.2d 239, 246–47 (Mo.Ct.App.1981); *Spychalaski v. MFA Life Ins. Co.,* 620 S.W.2d 388, 394 (Mo.Ct.App.1981). The evidence considered by the court, however, may not be used to vary, contradict, enlarge, modify, or curtail the written terms of the agreement.

In the instant case, the trial court apparently found that the intent and knowledge of the parties in negotiating the settlement agreement were fully apparent either on the face of the agreement or from the facts as then developed. Without making an explicit finding of ambiguity, the court determined that the surrounding circumstances were an appropriate consideration in the court's interpretation of the agreement. The court went on to declare that "[t]he circumstances surrounding the Kansas City Star contract, the actions of [Smith] in regard to the Kansas City Star, and the intent of the parties as to that contract in their negotiations and execution of the settlement agreement are developed sufficiently ... to warrant [finding a limited license]."

■ From our own review of the settlement agreement, we find that the document is plain and unambiguous. The trial court's consideration of the circumstances surrounding the Kansas City Star contract and the negotiations of the settlement agreement was used appropriately to determine the intent of the parties and was not used to vary the written terms of the agreement. We find that the terms of the settlement agreement clearly reach the present dispute.

■ The essence of Count II in the state court litigation was Smith's contention that in PMC's competition with Smith, PMC was using "trade secrets, confidential information and plans and designs owned solely and exclusively by [Smith]." Accordingly, Smith sought to enjoin PMC from using the trade secrets and confidential information relating to the Smith conversion system. Contrary to Smith's assertion, however, the settlement agreement is not limited to a release of the trade secrets claim. The only limitation on coverage is that the claim, right of action, cause of action or demand must *"somehow arise out of, result from or in some way pertain to the agreements and matters referred to [in the pleadings of the state court litigation]."* At the time suit was filed, and when it was settled, PMC was installing a press conversion system at the Kansas City Star. Presumably, PMC's installation of the press conversion system at the Star was among the actions of PMC that Smith alleged were an improper use of trade secrets and confidential information acquired from PMC's contacts with Smith. The patent asserted in the present litigation covers one method of installing Smith's conversion system. Clearly, this at least pertains to the trade secrets that were allegedly being disclosed. In this regard, we note that the license recognized by the district court extends only to PMC's method of installing the press conversion system at the Star.

Moreover, the manner and method of PMC's payments to Smith, as provided in the settlement agreement, reflect the parties' intention that PMC would continue to work on the Kansas City Star project. Smith's allegations of potential patent infringement within two months of the settlement clearly inhibited PMC's ability to complete the work.[3] Denying PMC the right to use the trade secrets and confidential information for which it had paid, would strip the agreement of much of its meaning. The agreement is broad and employs expansive terminology. The release in the settlement agreement is not limited to the cause of action then at issue; nor is it limited to

---

**3.** The district court reserved ruling on whether Smith's actions constitute a breach of the set- tlement agreement.

resolving past disputes. The agreement was an attempt to resolve finally those disputes then at issue and those that might arise in the future. We find that, as a whole and in light of established rules of contract interpretation, the settlement agreement was intended to allow PMC to continue manufacturing, marketing and installing its conversion system at the Kansas City Star.

Because we have determined that the settlement agreement clearly grants PMC a limited license under Smith's subsequently issued patent, it is unnecessary to address Smith's contention that the district court erred in applying the doctrine of equitable estoppel.

Accordingly, the district court order is affirmed. Costs are awarded to appellee.