**RESOLUTION TRUST CORPORATION, as Receiver of Madison County Federal Savings and Loan Association, Plaintiff–Appellee,**

v.

**M & L INVESTMENTS, Defendant–Appellant.**

No. 91–3009.

United States Court of Appeals, Seventh Circuit.

Argued March 30, 1992.

Decided Jan. 11, 1993.

David Antognoli (argued), Bernard & Davidson, Granite City, IL, for plaintiff-appellee.

David G. Dempsey (argued), Susman, Schermer, Rimmell & Shifrin, St. Louis, MO, for defendant-appellant.

Before COFFEY, FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

The Resolution Trust Corporation ("RTC"), as receiver of Madison County Federal Savings and Loan Association, brought this suit against Golden Pancake and M & L Investments, both Missouri general partnerships, to recover on a promissory note.[1] This appeal turns on the interpretation of that note.[2]

Golden Pancake was formed in 1985 by its partners, Jerome Feldman and M & L Investments, for the purpose of owning and operating two restaurants. M & L, which acquired and owned various real estate investments and other capital assets, also had two partners: Marc and Lawrence Goldfarb.

In June 1985, Golden Pancake received a loan for $800,000 from the Madison savings and loan. As a part of the loan transaction, Golden Pancake and M & L Investments signed the promissory note at issue in this case. Because this dispute concerns the proper interpretation of the final clause of the note and the signatures that appear below, we reproduce that portion of the note:

Borrowers sign as partners without recourse individually.

---

1. During the two-day jury trial, RTC moved to dismiss its case against Golden Pancake and the district judge granted the motion.

2. We have included a copy of the promissory note as an appendix to this opinion.

9300 Watson Rd.
Crestwood, Missouri
Property Address

2236 S. Brentwood
St. Louis, Mo 63144
Mailing address

Golden Pancake
a Missouri general partnership

Jerome Feldman, general
partner

M & L Investments,
a Missouri general partnership,
general partner

BY: Marc J. Goldfarb, general
partner

BY: Lawrence G. Goldfarb,
general partner

---

Before trial, both the RTC and M & L filed motions for summary judgment in which each took the position that the note was unambiguous and that each was entitled to judgment as a matter of law based on the text of the note. The RTC argued that M & L was a co-maker of the note. M & L responded in its motion for summary judgment that under the terms of the note Golden Pancake was the only borrower and that the exculpatory clause was intended to benefit M & L and Feldman. According to M & L, Golden Pancake could not become a maker of the note unless both its partners (Feldman and M & L) signed the note. The district court denied both parties' motions for summary judgment.

At the close of the evidence at trial, each party moved for a directed verdict in its favor, again on the ground that the note was unambiguous and required judgment in its favor. The district court found that because the promissory note was ambiguous, extrinsic evidence was admissible to determine the parties' intent in drafting the exculpatory clause. The district court therefore submitted the question of the parties' intent in drafting the exculpatory clause to the jury. The jury returned a verdict in favor of RTC against M & L in the sum of $902,092.14. M & L's motion for judgment notwithstanding the verdict or for new trial was denied, and M & L appealed.

Preliminarily, we must determine what law applies to this case. The parties agree that state law, specifically Missouri law, applies and we cannot find any reason to apply federal law. *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979); *United States v. Stump Home Specialties Mfg., Inc.*, 905 F.2d 1117, 1119 (7th Cir. 1990). Moreover, under the forum state's (Illinois) conflicts rule, Missouri law would apply because Missouri had the most significant contacts with this transaction. *See Boise Cascade Home & Land Corp. v. Utilities, Inc.*, 127 Ill.App.3d 4, 82 Ill.Dec. 180, 186–87, 468 N.E.2d 442, 448–49 (1984).

█ We turn first to M & L's argument that the district court should have entered judgment notwithstanding the verdict in its favor. Under Missouri law, the grant or denial of a directed verdict or judgment notwithstanding the verdict is reviewed *de novo*. *Sutherland v. Elpower Corp.*, 923 F.2d 1285, 1288 (8th Cir.1991). The district judge should grant a motion for judgment notwithstanding the verdict only " 'when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party.' " *Id.* at 1288 (quoting *SCNO Barge Lines, Inc. v. Anderson Clayton & Co.*, 745 F.2d 1188, 1192–93 (8th Cir.1984)). The same standard applies to the denial of a motion for a directed verdict. *Id.*

Whether M & L is liable for repayment of the loan turns on the correct interpretation of the exculpatory clause which states: "[b]orrowers sign as partners without recourse individually." As we noted above, the district judge found that this language was ambiguous and admitted extrinsic evidence. M & L contends on appeal that the district court erred in so ruling and should have granted its motion for a judgment notwithstanding the verdict.

 Under Missouri law, whether a contract is ambiguous is a question of law for the trial judge. *Press Machinery Corp. v. Smith R.P.M. Corp.*, 727 F.2d 781, 784 (8th Cir.1984); *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo.1973). If the trial judge determines that the contract is unambiguous, "then the intention of the parties and interpretation of the contract is for the court to determine, as garnered from the four corners of the document." *Press Machinery Corp.*, 727 F.2d at 784; *J.E. Hathman, Inc.*, 491 S.W.2d at 264. If, on the other hand, the judge determines that the contract is ambiguous, the resolution of ambiguity is a question of fact to be resolved by the jury through the use of extrinsic evidence. *Press Machinery Corp.*, 727 F.2d at 784; *Fitch v. Doke*, 532 F.2d 115, 117 (8th Cir.1976). In determining the meaning of a contract, the trial court may consider "more than the mere words of the contract." *Press Machinery Corp.*, 727 F.2d at 784. "The surrounding circumstances at the time of contracting and the positions and actions of the parties are relevant to the judicial interpretation of the contract." *Id.; Cure v. City of Jefferson*, 380 S.W.2d 305, 310–11 (Mo.1964).

 The RTC posits that the note was unambiguous and that M & L was liable for payment of the loan in accordance with its terms on one of two theories: (1) either M & L was co-maker of the note with Golden Pancake, or alternatively (2) the non-recourse language used excluded only the natural persons who signed the note,

Feldman and the two Goldfarb brothers. M & L responds that neither theory of the RTC has any merit.

The RTC's first theory is that there were two borrowers, Golden Pancake and M & L. The promissory note refers to the "borrower," except in the exculpatory clause, which uses "borrowers." The RTC therefore argues that M & L was one of the "borrowers" referred to in the exculpatory clause.

M & L insists that the RTC reads the term "borrowers" out of context because the note otherwise refers to the "borrower." *See Butler v. Centerre Trust Co.*, 656 S.W.2d 831, 834 (Mo.App.1983) ("an instrument is not to be construed by focusing upon a single aspect thereof ... and ascribing a meaning thereto, without reference to its context in the whole instrument."); *see also Tamko Asphalt Products, Inc. v. Fenix*, 321 S.W.2d 527, 533 (Mo.App.1958). M & L argues (as it did before the district court) that the signature block shows that there was one maker, Golden Pancake, and that Feldman and M & L signed the note in a representative capacity as its partners. It insists that the term "borrowers" refers to Feldman and M & L as the partners of Golden Pancake. Both parties agree that "borrowers" does not refer to the Goldfarbs. Under M & L's interpretation, the exculpatory clause means that: "Feldman and M & L sign as partners without recourse individually (as partners)."

In the instruction conference, the district judge observed that: "[o]nce you see that document, and look at the signature block, to me its obvious that there is only one maker, and that's Golden Pancake, and that Feldman and M & L are signing as partners." The district judge later stated to the RTC's counsel that "[o]nly one party signed the note, and see, I am tempted almost to say that as a matter of law." [3]

According to M & L, the RTC's interpretation of the exculpatory clause leads to an absurd result. If the RTC is correct that

---

**3.** Moreover, in a June 30, 1987 letter, Madison described Golden Pancake as the only maker of the note.

M & L and Golden Pancake were the borrowers, then the exculpatory clause would mean that: "Golden Pancake and M & L sign as partners without recourse individually." M & L points out that Golden Pancake had partners (Feldman and M & L) but *was not a partner*. We agree with M & L that its interpretation of the agreement is the only plausible reading of the document.

Our conclusion that M & L signed the note in a representative capacity for Golden Pancake—and not as a comaker—is reinforced by § 400.3–403 of the Missouri Revised Statutes. *See* Mo.Rev.Stat. § 400.3–403. Section 400.3–403(3) provides that:

> Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.

The manner in which M & L signed the promissory note indicates that under § 400.3–403, M & L's signature on the note was made on behalf of Golden Pancake. In the note, the term "general partner" appears directly under M & L's partnership name. We therefore hold that M & L signed the promissory note on behalf of Golden Pancake.

■ M & L also challenges the RTC's alternate theory of liability. Under that theory, the term "individually" in the exculpatory clause referred to Feldman and the Goldfarbs, the individual signatories to the note. Thus, according to the RTC, the note did not exclude M & L. M & L contends that this interpretation has the effect of adding or deleting words to the exculpatory clause. According to M & L, the RTC's interpretation of the clause would read as follows: "Feldman and M & L sign as partners; and the persons signing on behalf of Feldman and M & L sign without recourse individually." M & L argues that this theory of liability is without merit because it enlarges the terms of the contract. *See Conservative Federal Savings & Loan Association v. Warnecke*, 324 S.W.2d 471, 480 (Mo.App.1959). We agree. In view of the actual language of the exculpatory clause, such an interpretation is implausible.

M & L also challenges the other possible interpretation of the clause, which would favor the RTC. Under that interpretation, the exculpatory clause would read: "the individuals signing this note do so without recourse." This interpretation is faulty as well because it reads the phrase "as partners" out of the sentence. M & L argues that it is better to interpret "individually" as referring back to the phrase "as partners." We agree that a modifying word or phrase generally refers to the word or phrase in closest proximity to it in a sentence. *See Isaac T. Cook v. Bank of St. Louis*, 297 S.W.2d 607 (Mo.App.1957).

The RTC's position also leads to an implausible allocation of risk among the partners of Golden Pancake, namely, Feldman and M & L (the Goldfarbs). The partnership agreement of Golden Pancake allocates one half of the income to each partner. Under the RTC's second interpretation of the exculpatory clause, M & L volunteered to place all its assets at risk for the repayment of the loan while permitting its equal partner, Feldman, to have no personal risk at all. This would require us to believe that the Goldfarbs intended to be gratuitous benefactors for their business partner.

Moreover, paragraph 9 of the Golden Pancake partnership agreement provides that each partner is only liable for the percentage of liability equivalent to the percentage of ownership interest, which in this case is fifty-fifty. Additionally, the partnership agreement provides for the right of contribution if one partner should pay more than one-half of a partnership obligation. Therefore, should M & L be forced to pay the entire judgment in this case, it has a right of contribution against Feldman for one-half of that amount. The RTC's view that M & L is liable on the note, while Feldman is "absolved" of any responsibility, does not make sense in view of the Golden Pancake's right of contribution against Feldman. Thus, we hold that the word "borrowers" and the word "indi-

vidually" refer to the partners of Golden Pancake, Feldman and M & L.

After examining the note in light of the circumstances surrounding its execution, including the partnership agreement of Golden Pancake, we conclude that M & L signed the note in a representative capacity for Golden Pancake. Thus, we hold that the terms "borrowers" and "individually" refer to the partners of Golden Pancake and the exculpatory clause means that: "Feldman and M & L sign as partners without recourse individually (as partners)." The district court should not have submitted this case to the jury. It did. Consequently, we must find that the district court erred in denying M & L's motion for judgment notwithstanding the verdict.[4]

We REVERSE the judgment of the district court and REMAND this case for the entry of judgment in favor of M & L.

## APPENDIX
### PROMISSORY NOTE

$800,000.00 ST. LOUIS, MISSOURI June 14, 1985

FOR VALUE RECEIVED, the undersigned ("Borrower") promises to pay in lawful money of the United States of America, to Madison County Federal Savings and Loan Association ("Lender"), or order, at its Main office in the City of Granite City, State of Illinois, or at such other place as the holder hereof may from time to time designate in writing, the principal amount of EIGHT HUNDRED THOUSAND AND NO/100—DOLLARS ($800,000.00), together with interest from the date hereof on the unpaid principal balance at the initial interest rate of thirteen percent (13.00%) per annum; principal and interest payable on the first day of each month in initial consecutive monthly installments of EIGHT THOUSAND EIGHT HUNDRED FORTY–NINE AND 60/100—DOLLARS ($8,849.60) commencing on the first day of August, 1985. Monthly installments, in such amount or as adjusted as hereinafter set forth, shall continue until the first day of July, 1995, at which time the remaining indebtedness shall be due and payable in a lump sum.

### INTEREST RATE ADJUSTMENTS

On the due date of the 12th scheduled payment, and on the same date every year thereafter, the interest rate shall be adjusted to a rate that is 2.25 points above the one (1) year Treasury Bill, as of the date of adjustment. Each time the interest rate is adjusted, the monthly installment of principal and interest shall be adjusted accordingly to an amount that would cause the principal balance then outstanding to be amortized over a period ending 30 years after the date hereof, such adjusted installment to be due and payable commencing with the first scheduled payment following such rate adjustment date and continuing until the first scheduled payment following the next rate adjustment, until the loan is paid in full or until the entire balance is due and payable hereunder, whichever first occurs.

### PREPAYMENT

Borrower may prepay the principal amount outstanding in whole or in part. The Note holder may require that any partial prepayments (i) be made on the date monthly installments are due and (ii) be in the amount of that part of one or more monthly installments which would be applicable to principal. Any partial prepayment shall be applied against the principal amount outstanding and shall not postpone the due date of any subsequent monthly installments or change the amount of such installments, unless the Note holder shall otherwise agree in writing.

### DEFAULT

If any monthly installment under this Note is not paid when due and remains unpaid for 30 days after notice by Note holder, the entire principal amount outstanding and accrued interest thereon shall at once become due and payable. The Note holder may exercise this option to accelerate during any default by Borrower regardless of any prior forbearance. If suit is brought to collect this Note, the Note holder shall be entitled to collect all reasonable costs and expenses of suit, including, but not limited to, reasonable attorney's fees.

---

**4.** In view of our holding, we need not address M & L's argument that RTC sued the wrong party or its argument that the district court committed prejudicial error in allowing M & L's financial statement to be shown to the jury.

## CHARGES

Borrower shall pay to the Note holder a late charge of Five percent (5%) of any monthly installment not received by the Note holder within 15 days after the installment is due.

## SECURITY

The indebtedness evidenced by this Note is secured by a Deed of Trust of even date herewith, and reference is made to the Deed of Trust for rights as to acceleration of the indebtedness evidenced by this Note.

## OTHER PROVISIONS

a) Any notice to Borrower provided for in this Note shall be given by mailing such notice by certified mail addressed to Borrower at the Property address stated below, or to such other address as Borrower may designate by notice to the Note holder. Any notice to the Note holder shall be given by mailing such notice by first class mail to the Note holder at the address stated in the first paragraph of this Note, or at such other address as may have been designated by notice to Borrower.

b) Presentment, notice of dishonor, protest, notices of protest, and notices of intention to accelerate maturity are hereby waived by all makers, sureties, guarantors and endorsers hereof. This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them and their successors and assigns.

Borrowers sign as partners without recourse individually.

9300 Watson Road
Crestwood, Missouri
Property Address

GOLDEN PANCAKE
a Missouri general partnership

2236 South Brentwood
St. Louis, Missouri 63144
Mailing Address

_____
JEROME FELDMAN, general partner

M & L INVESTMENTS,
a Missouri general partnership,
general partner

BY: _____
MARC J. GOLDFARB, general partner

BY: _____
LAWRENCE G. GOLDFARB, general partner