Sec. Camera Warehouse, Inc. v. Bowman, 2017 NCBC 38.

STATE OF NORTH CAROLINA

BUNCOMBE COUNTY

SECURITY CAMERA
WAREHOUSE, INC.,

          Plaintiff,

v.

JUSTIN BOWMAN, individually,
and ARCDYN, INC.,

          Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 5385

**ORDER AND OPINION ON
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
DEFENDANTS' MOTION TO DISMISS**

1.    This case is the second litigation in less than a year between Plaintiff Security Camera Warehouse, Inc. ("Security Camera") and one of its former owners, Defendant Justin Bowman. In this action, Security Camera seeks to enjoin Bowman and his new company Arcdyn, Inc. (collectively, "Defendants") from misappropriating Security Camera's trade secrets. Security Camera also alleges that Bowman breached his fiduciary duties and that Defendants engaged in other unfair trade practices.

2.    Defendants respond that Security Camera released all of these claims as part of a settlement of a prior lawsuit in July 2016. On that basis, Defendants contend that each asserted cause of action is barred.

3.    Security Camera moved for a preliminary injunction ("Motion for Preliminary Injunction"), and Defendants moved to dismiss the complaint pursuant to North Carolina Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss"). Having considered the motions, the briefs, and the arguments at the hearing on March 30,

2017, the Court **GRANTS in part** Defendants' Motion to Dismiss and **DENIES** Plaintiff's Motion for Preliminary Injunction.

> *Burt Langley, P.C. by Katherine Langley and Chad T. Anderson, for Plaintiff.*

> *Fisher Stark, P.A. by W. Perry Fisher, II and Brad A. Stark, for Defendants.*

Conrad, Judge.

## I.
## BACKGROUND

4.     The Court does not make findings of fact on a motion to dismiss under Rule 12(b)(6).   Unless noted otherwise, the following factual summary is drawn from relevant allegations in Security Camera's Amended Complaint ("Complaint") and documents referred to in the Complaint.

5.     Security Camera is an online retailer of surveillance camera technology. (Am. Compl. ¶ 1.)  It is a Delaware corporation with its principal place of business in Buncombe County, North Carolina. (Am. Compl. ¶¶ 5, 11.) Prior to July 2016, Security Camera had two shareholders, Bowman and Matthew Nederlanden, each of whom owned 50 percent of the shares.  (Am. Compl. ¶ 2.)

6.     In 2016, a dispute arose between Bowman and Nederlanden, resulting in litigation in North Carolina Superior Court in Buncombe County.  (Am. Compl. ¶¶ 2, 13.)  According to exhibits filed with the Motion for Preliminary Injunction, Security Camera asserted in that action claims for breach of contract, tortious interference with contract, fraud, unfair or deceptive trade practices, and specific performance. (Pl.'s Reply in Supp. of Mot. for Prelim. Inj. Ex. 2 p.5.)

7.     On July 14, 2016, Security Camera, Nederlanden, and Bowman executed a settlement agreement ("Agreement"). (Am. Compl. ¶ 14; Defs.' Mot. to Dismiss Ex. A ["Agreement"].)   As part of the Agreement, Bowman sold his shares of Security Camera to Nederlanden, making Nederlanden the company's sole owner. (Am. Compl. ¶¶ 2, 14–15; Agreement ¶ 3.) Bowman also "resign[ed] as an employee, officer, and director of" Security Camera with a retroactive effective date of May 31, 2016. (Agreement ¶ 5.)

8.     In addition to requiring dismissal of the 2016 litigation, the Agreement includes a clause entitled "Mutual Release of Claims." (Agreement ¶ 4.)   In this clause, Security Camera and Nederlanden:

> generally release and forever discharge Bowman, his agents, heirs, successors and assigns, from any and all claims, demands, and causes of action of whatever kind or character which [Security Camera and Nederlanden] have, or may have in the future, against Bowman, based on any acts or events that have occurred on or before the execution of this Agreement, whether or not growing out of or connected in any way with operations or business transactions of [Security Camera].

(Agreement ¶ 4.a.)   Bowman released any claims against Security Camera and Nederlanden on substantially similar terms. (*See* Agreement ¶ 4.b.)

9.     During negotiations for the Agreement and prior to its execution, Bowman took "sole control" of Security Camera's server. (Am. Compl. ¶ 3.) While in control of the server, "Bowman backed up the corporate database to a stand-alone drive and retained a digital copy." (Am. Compl. ¶¶ 3, 24.)   This database contains customer information ("Customer List") that Security Camera alleges is subject to trade secret protection. (*See* Am. Compl. ¶¶ 16–19.)   Among other things, the Customer List includes partial credit card data, pricing structures specific to customers, supplier

information, historic purchasing and sales data by customer, details about customer pricing tiers, price changes over time, inventory management strategies, and a description of each product and the product price for each pricing tier. (Am. Compl. ¶ 19.)

10. Shortly after executing the Agreement, Bowman incorporated Arcdyn, a Delaware corporation with its principal place of business in Buncombe County, North Carolina. (Am. Compl. ¶¶ 7, 26.) Security Camera and Arcdyn are direct competitors. (*See, e.g.*, Am. Compl. ¶¶ 27–44.)

11. In November 2016, Security Camera learned that Defendants had solicited some of Security Camera's customers through telephone calls and mass communication e-mails. (Am. Compl. ¶ 28.) Security Camera alleges that Defendants made these communications using the Customer List. (*See* Am. Compl. ¶¶ 27, 29, 36, 37, 39.)

12. On November 16, 2016, Defendants disabled the domain SCWddns.com, which Security Camera claims to own. (*See* Am. Compl. ¶ 53.) Prior to that date, Security Camera used the domain to host an application that allowed "prospective customers to see surveillance footage" from sample equipment before making a purchase. (Am. Compl. ¶¶ 47–48.) Although the Complaint offers little detail, Bowman was apparently able to exercise control over the domain after resigning from the company. (*See* Am. Compl. ¶ 52.) Security Camera restored the application by purchasing a new domain, and it alleges that it lost sales during the 28 days in which the application was inoperable. (*See, e.g.*, Am. Compl. ¶¶ 54, 56.)

13.     Less than six months after executing the Agreement and its mutual release provisions, Security Camera initiated this action on December 20, 2016.  Security Camera asserts eight causes of action: (i) trade-secret misappropriation; (ii) breach of fiduciary duty (against only Bowman); (iii) aiding and abetting breach of fiduciary duty (against only Arcdyn); (iv) unfair or deceptive trade practices; (v) tortious interference with existing and prospective economic advantage; (vi) conversion; (vii) common-law replevin; and (viii) unjust enrichment.

14.     On February 3, 2017, Security Camera filed its Motion for Preliminary Injunction.  On March 1, 2017, Defendants filed their Motion to Dismiss.  The Court held a hearing on the Motion for Preliminary Injunction on March 30, 2017, where all parties were represented by counsel.  Because the legal issues raised by the motions are substantially the same, the Court renders this decision without holding a separate hearing on the Motion to Dismiss.  *See* BCR 7.4.  The motions are now ripe for determination.

## II.
## DEFENDANTS' MOTION TO DISMISS

15.     Defendants primarily argue that, in settling the parties' previous litigation, Security Camera also released the claims asserted in this action.  The Court must determine first whether it is appropriate to consider the July 2016 Agreement under Rule 12(b)(6) and, if so, whether the terms of the mutual release provisions bar Security Camera's current claims.

## A. Legal Standard

16.     In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the Complaint as true and view the facts and permissible inferences "in the light most favorable to" the non-moving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986); *see also Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). "[T]he court is not required to accept as true any conclusions of law or unwarranted deductions of fact." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001). Accordingly, a Rule 12(b)(6) motion should be granted only "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; and (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim." *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986).

17.     The Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers," without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007) (quoting *Oberlin Capital*, 147 N.C. App. at 60, 554 S.E.2d at 847). This includes documents that "are presented by the defendant." *Id.*

18.     Security Camera argues that the Court should not consider the Agreement because it is not the subject of the Complaint nor attached to it. The Court disagrees. The Complaint alleges the existence of the Agreement and makes assertions as to its

contents. (*See* Am. Compl. ¶¶ 2, 14–15, 24, 26, 52, 74, 82, 118, 140.) The Complaint also makes allegations about the legal effect of the Agreement—for example, that Bowman gave up his right or interest in Security Camera's property, that Bowman did not receive permission to use Security Camera's trade secrets, and that the Agreement did not terminate Bowman's fiduciary duties to Security Camera. (*See* Am. Compl. ¶¶ 24, 81–97, 140.)

19. In addition, the rule against considering documents outside the complaint exists to prevent "unfairness resulting from surprise" and to allow the non-moving party a reasonable opportunity for rebuttal. *Erie Ins. Exch. v. Builders Mut. Ins. Co.*, 227 N.C. App. 238, 242–43, 742 S.E.2d 803, 808 (2013) (quoting *Coley v. N.C. Nat'l Bank*, 41 N.C. App. 121, 126, 254 S.E.2d 217, 220 (1979)). There is no surprise here, and Security Camera has not objected to the authenticity of the Agreement. *See, e.g.*, *Birdsong v. AT&T Corp.*, No. C12-6175 TEH, 2013 U.S. Dist. LEXIS 37272, at *5–6 (N.D. Cal. Mar. 18, 2013) (considering settlement agreement in connection with motion to dismiss under Federal Rules of Civil Procedure where authenticity not disputed); *Metcalf v. Blue Cross Blue Shield of Mich.*, No. 3:11-cv-1305-ST, 2012 U.S. Dist. LEXIS 77628, at *3 (D. Or. Apr. 20, 2012) (same); *Deboy v. Lincoln Univ. of the Commonwealth Sys. of Higher Educ.*, No. 05-CV-06755, 2006 U.S. Dist. LEXIS 44839, at *7 (E.D. Pa. June 20, 2006) (same); *New Mem. Assocs. v. Credit Gen. Ins. Corp.*, 973 F. Supp. 1027, 1029 (D.N.M. 1997) (same).

20. Defendants rely on three additional documents outside the Complaint: (i) a May 31, 2016 Memorandum of Understanding between the parties; (ii) a document

that allegedly supports Bowman's claim to own SCWddns.com; and (iii) the Affidavit of Matthew Nederlanden in support of Security Camera's Motion for Preliminary Injunction. These documents are not referred to or incorporated by the Complaint, and Security Camera makes no admissions regarding them. The Court therefore does not consider these documents for the purpose of deciding Defendants' Motion to Dismiss.

## B. Security Camera's Claims

21. "A release is the giving up or abandoning of a claim or right to the person against whom the claim exists or the right is to be exercised." *Adder v. Holman & Moody, Inc.*, 288 N.C. 484, 492, 219 S.E.2d 190, 195 (1975). It is well settled that a valid release "operates as a merger of, and bars all right to recover on, the claim or right of action included therein, as would a judgment duly entered in an action between" the parties. *Jenkins v. Fields*, 240 N.C. 776, 778, 83 S.E.2d 908, 910 (1954).

22. Security Camera does not challenge the validity or enforceability of the release. Accordingly, the issue for decision is whether Security Camera's claims fall within its scope—that is, whether Security Camera abandoned the asserted causes of action when it "generally release[d] and forever discharge[d] Bowman" from "any and all claims, demands, and causes of action of whatever kind or character" "based on any acts or events that have occurred on or before the execution of" the Agreement on July 14, 2016. (Agreement ¶ 4.a.)

1. Misappropriation of Trade Secrets

23. The trade-secret claim concerns Defendants' alleged misuse of Security Camera's Customer List. According to the Complaint, Bowman acquired the Customer List during negotiations over the Agreement, and Defendants then used it to solicit Security Camera's customers in November 2016. Defendants contend that the claim is barred because the "alleged wrongful act of taking possession of the Customer List occurred prior to the execution of" the Agreement. (Defs.' Mem. in Supp. of Mot. to Dismiss 6 ["Defs.' MTD Mem."].) Security Camera responds that the release "did not excuse Bowman from wrongful acts committed after the execution," including using the Customer List to solicit customers. (Pl.'s Resp. to Mot. to Dismiss 8 ["Pl.'s MTD Resp."].)

24. This dispute presents a question of contract interpretation: whether the parties' mutual release bars recovery for the post-release use of a trade secret wrongfully acquired *before* the execution of the release. The Court holds that it does.

25. The parties' Agreement bears the hallmarks of a "comprehensively phrased general release." *Sykes v. Keiltex Indus.*, 123 N.C. App. 482, 487, 473 S.E.2d 341, 344 (1996) (citation and quotation marks omitted). It applies to "any and all claims, demands, and causes of action of whatever kind or character," including claims Security Camera "may have in the future." (Agreement ¶ 4.a.) In using such "expansive terminology," the parties made clear that the release "is not limited to the cause of action then at issue; nor is it limited to resolving past disputes." *Press Mach. Corp. v. Smith R.P.M. Corp.*, 727 F.2d 781, 785–86 (8th Cir. 1984). Rather, the

Agreement "was an attempt to resolve finally those disputes then at issue and those that might arise in the future." *Id.* at 786.

26.     The sole limitation is that the released claims must be "based on any acts or events that have occurred on or before the execution of this Agreement." (Agreement ¶ 4.a.) That limitation is satisfied here. The Complaint alleges over and over again that Bowman acquired the Customer List *during* negotiations for the Agreement, not *after* its execution. Prior to July 14, 2016, Bowman took control of the company's server, "backed up the corporate database to a stand-alone drive," and, as a result, "had the opportunity to acquire [Security Camera's] trade secrets and did in fact acquire said trade secrets." (Am. Compl. ¶¶ 3, 24, 74; *see also* Am. Compl. ¶ 118.) These allegations, which expressly base the misappropriation claim on pre-release acts, "defeat" the claim and require dismissal. *Oberlin Capital*, 147 N.C. App. at 56, 554 S.E.2d at 844.

27.     This is not merely a pleading technicality. By statute, a claim for trade-secret misappropriation requires a showing that the defendant lacked authority to possess or use the trade secret. *See* N.C. Gen. Stat. § 66-152(1) (defining "Misappropriation" to mean "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret"). The Complaint attempts to establish the absence of authority through Bowman's pre-release acquisition of the Customer List—which Security Camera's counsel again asserted to be wrongful at the hearing.

Security Camera's claim as to the subsequent unauthorized use of the same trade secret is bound up with and premised on those allegations.

28. Security Camera's brief makes no effort to disentangle its allegations, nor has it cited any analogous case law. Its primary argument—that the release "is not prospective"—is untenable. (Pl.'s MTD Mem. 8.) The Agreement plainly covers claims Security Camera "may have in the future." (Agreement ¶ 4.a.) Accordingly, the fact that Security Camera alleges *additional* wrongdoing after the execution of the release does not save its claim. *See Somerset Pharms., Inc. v. Kimball*, 49 F. Supp. 2d 1335, 1339–1340 (M.D. Fla. 1999) (dismissing trade-secret claim where defendant acquired trade secret prior to executing general release and used trade secret after execution); *see also Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1372 (Fed. Cir. 1999) (dismissing patent-infringement claim arising after date of release where claim related to pre-release conduct); *Press Machinery*, 727 F.2d at 786 (same).

29. It is by no means clear that Security Camera would have a viable claim even if the release were not prospective. Many jurisdictions hold that a claim for misappropriation of trade secrets "arises only once, when the trade secret is initially misappropriated, and each subsequent use or disclosure of the secret augments the initial claim rather than arises as a separate claim." *Cadence Design Sys., Inc. v. Avant! Corp.*, 57 P.3d 647, 654 (Cal. 2002) (applying California's Uniform Trade Secrets Act). This appears to be a question of first impression in North Carolina, and the parties did not address the issue or cite any law on point. The Court need not

reach the issue because the parties' release expressly covers existing and future claims.

30. The bottom line is that Security Camera was not required to enter into a general release; it chose to do so. In negotiating the release, Security Camera could have required Bowman to return its property, reserved any potential trade-secret claims, or refused to release claims accruing after the execution of the Agreement. *See Fin. Servs. of Raleigh, Inc. v. Barefoot*, 163 N.C. App. 387, 393, 594 S.E.2d 37, 41–42 (2004) (holding that causes of action "subsequently maturing or accruing, are not as a rule discharged by the release unless expressly embraced therein or falling within the fair import of the terms employed"). It did not, and it is now far too late to import limitations that were not the subject of the parties' bargain. *See, e.g.*, *Augustine Med.*, 194 F.3d at 1373 ("[I]t is the burden of parties entering into a settlement agreement to expressly reserve in the agreement any rights that they wish to maintain beyond the date of the settlement agreement."); *see also United States v. William Cramp & Sons Ship & Engine Bldg. Co.*, 206 U.S. 118, 128 (1907) ("If parties intend to leave some things open and unsettled their intent so to do should be made manifest.").

31. Finally, Security Camera has not argued that its claim against Arcdyn, which was not a party to the release, would survive in the event its claim against Bowman is barred. As a result, the Court does not address Arcdyn separately and notes only that the Agreement released Bowman as well as his "agents, heirs, successors, and assigns." (Agreement ¶ 4.a.)

32. Because the plain and unambiguous language of the parties' mutual release bars Security Camera's claim for trade-secret misappropriation, the Court dismisses the claim. In light of this disposition, the Court need not consider Defendants' alternative arguments regarding whether the Customer List satisfies the requirements for trade-secret protection.

2. Unjust Enrichment

33. Security Camera's claim for unjust enrichment is based solely on "Defendants' taking and wrongful use of the Customer List." (Am. Compl. ¶ 135.) The parties' mutual release bars this claim for the reasons discussed above. The Court therefore grants the Motion to Dismiss the claim for unjust enrichment.

3. Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty

34. The Complaint alleges that Bowman breached his fiduciary duties in two ways. First, it alleges that Bowman breached the duties of confidentiality and loyalty "by converting" the Customer List. (Am. Compl. ¶ 85.) Second, it alleges that Bowman breached the duty of loyalty "by disabling" the SCWddns.com domain. (Am. Compl. ¶ 86.)

35. The Court concludes that the claim for breach of fiduciary duty is based on acts or events occurring prior to the execution of the Agreement. As discussed above, Security Camera may not assert claims based on Bowman's wrongful, pre-release acquisition of the Customer List. The release therefore bars the claim for breach of fiduciary duty to the extent it is based on allegations of "converting" the Customer List.

36.     The release also bars recovery for any alleged breach of loyalty stemming from Defendants' interference with SCWddns.com.  To establish that Bowman owed fiduciary duties to Security Camera, the Complaint alleges that "Bowman was an owner, officer, and fiduciary" of the company "[p]rior to the execution of" the release. (Am. Compl. ¶ 82.)  Accordingly, Security Camera relies on these pre-release acts or events to establish an essential element of its claim for breach of fiduciary duty: the existence of a fiduciary relationship between Security Camera and Bowman.  *See Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 268 (2013) ("For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties."); *accord Beard Research, Inc. v. Kates*, 8 A.3d 573, 602 (Del. Ch. 2010) (requiring plaintiff to establish existence and breach of fiduciary duty).

37.     Security Camera contends that Bowman's duty of loyalty persisted after his resignation and departure from the company—a question governed by Delaware law. (*See* Am. Compl. ¶¶ 85–86, 92–93.)  Delaware courts have rejected that argument. *See Simplexity, LLC v. Zeinfeld*, No. 8171-VCG, 2013 Del. Ch. LEXIS 95, at *22–23 n.72 (Del. Ch. Apr. 5, 2013) ("To the extent Simplexity seeks injunctive relief against future breaches of Zeinfeld's duty of loyalty, its request must be denied because Zeinfeld owes no fiduciary duties after termination.").  Even if Security Camera were correct, however, the Court concludes that the Agreement clearly and unambiguously applies to claims Security Camera "may have in the future" that are also based on the fiduciary relationship that existed prior to execution of the release.  (Agreement ¶ 4.a.)

38. The Court therefore grants the Motion to Dismiss as to the claim for breach of fiduciary duty. The Court also grants the motion as to the claim against Arcdyn for aiding and abetting the breach of fiduciary duty, which depends on the claim for breach. *See, e.g.*, *Veer Right Mgmt. Group, Inc. v. Czarnowski Display Serv.*, 2015 NCBC LEXIS 13, at *6 (N.C. Super. Ct. Feb. 4, 2015) ("*if* North Carolina recognizes a claim for aiding and abetting breach of fiduciary duty, the elements would include . . . violation of a fiduciary duty"); *In re Comverge, Inc. S'holders Litig.*, No. 7368-VCP, 2014 Del. Ch. LEXIS 240, at *62 (Del. Ch. Nov. 25, 2014) (elements of "aiding and abetting" require "breach of the fiduciary's duty"). In reaching this conclusion, the Court does not need to decide whether Delaware law should apply to the aiding-and-abetting claim or whether North Carolina law recognizes such a claim.

4. Unfair or Deceptive Trade Practices

39. Security Camera argues that it has adequately stated a claim for unfair or deceptive trade practices for three reasons: (i) Defendants misappropriated Security Camera's trade secrets; (ii) Bowman breached his fiduciary duties, and Arcdyn aided and abetted the breach; and (iii) Defendants disabled SCWddns.com. (*See* Pl.'s MTD Resp. 19–20.) Because the Court has held that the parties' mutual release bars Security Camera's trade-secret and fiduciary-duty claims, the release also bars recovery for the same alleged wrongdoing under N.C. Gen. Stat. § 75-1.1.

40. Defendants contend that the disabling of SCWddns.com also fails to support a Section 75-1.1 claim. First, they contend that the release bars the claim. Second, they argue that Bowman is the rightful owner of the domain. The Court concludes

that both arguments raise issues of fact, not suitable for determination under Rule 12(b)(6).

41. It is unclear whether the release applies to Defendants' interference with SCWddns.com. The alleged wrong (disabling of the domain) occurred in November 2016, well after execution of the release. In contrast with the trade-secret claim discussed above, the Complaint does not clearly allege that Bowman wrongfully took control of the domain prior to the execution of the release. Defendants point to the allegation that "Bowman had set up the SCWddns.com domain . . . on or around December 31, 2014." (Compl. ¶ 51.) But the Court sees no clear connection between the initial creation of the domain and its eventual demise.

42. Defendants' assertion of ownership also fails at this stage. Security Camera has expressly alleged that it owns SCWddns.com. (*See* Am. Compl. ¶¶ 117, 128.) Defendants rest their claim to ownership on an exhibit that is not attached to or specifically referred to in the Complaint, and the Court therefore declines to consider it. (*See* Defs.' MTD Mem. 17, Ex. B.)

43. Security Camera's allegations of ownership are therefore sufficient under Rule 12(b)(6), and Defendants have not raised any other challenge to the sufficiency of Security Camera's allegations. Accordingly, the Court denies the Motion to Dismiss with respect to Security Camera's Section 75-1.1 claim.

5. Conversion and Common-Law Replevin

44. Security Camera's claims for conversion and common-law replevin raise similar issues. The Complaint alleges that Defendants converted and must return

the Customer List and the SCWddns.com domain. Defendants again contend that the release bars the claims and that it owns the SCWddns.com domain. (*See* Defs.' MTD Mem. 18–20.)

45. The Complaint expressly alleges that Bowman improperly obtained a copy of the Customer List "[d]uring the negotiations" over the Agreement. (Am. Compl. ¶ 118.) Accordingly, and for the reasons stated above, the release bars Security Camera's claims for conversion and replevin to the extent based on Defendants' alleged taking of the Customer List.

46. The release does not bar these claims to the extent they relate to Defendants' interference with SCWddns.com. As discussed in connection with the Section 75-1.1 claim, the Complaint does not identify when Defendants first exercised control over the domain to the exclusion of Security Camera. In addition, for the reasons given above, the Complaint adequately alleges that Security Camera owns SCWddns.com.

47. Defendants have not raised any additional challenges to the sufficiency of the allegations regarding the claims for conversion and common-law replevin. The Court therefore denies the Motion to Dismiss as to these claims.

6. Tortious Interference with Existing and Prospective Economic Advantage

48. To state a claim for tortious interference with prospective economic advantage, Security Camera "must allege facts to show that the defendants acted without justification in 'inducing a third party to refrain from entering into a contract with them which contract would have ensued but for the interference.'" *Walker v. Sloan*, 137 N.C. App. 387, 393, 529 S.E.2d 236, 242 (2000) (internal citation omitted);

*see also Owens v. Pepsi Cola Bottling Co.*, 330 N.C. 666, 680, 412 S.E.2d 636, 644 (1992). Security Camera has alleged that Defendants used the "Customer List to maliciously interfere with [Security Camera's] ongoing business relations and customer base" and also disabled SCWddns.com as a means to "interfere with [Security Camera's] ability to attract prospective customers." (Am. Compl. ¶¶ 107–108.)

49.    The Court again concludes that Security Camera is barred from recovering for Defendants' alleged misuse of the Customer List. This claim, along with the others discussed above, is based on acts prior to execution of the release.

50.    The Court also concludes that Security Camera has failed to allege facts sufficient to support its claim that Defendants' interference with the SCWddns.com constitutes tortious interference with prospective economic advantage. The "mere expectation of future contracts" with potential customers is insufficient to state a claim. *McElmurry v. Alex Fergusson, Inc.*, No. 04CV389, 2006 U.S. Dist. LEXIS 10760, at *53 (M.D.N.C. Mar. 8, 2006). Here, the Complaint alleges only that Defendants "caus[ed] lost sales during holiday shopping traffic." (Am. Compl. ¶ 54.) The Complaint does not identify any specific customers or a specific contract that a third party was induced not to enter. These threadbare allegations are insufficient to state a claim. *See, e.g.*, *Bldg. Ctr., Inc. v. Carter Lumber, Inc.*, 2016 NCBC LEXIS 79, at *29 (N.C. Super. Ct. Oct. 21, 2016); *TaiDoc Tech. Corp. v. OK Biotech Co.*, 2016 NCBC LEXIS 26, at *40–41 (N.C. Super. Ct. Mar. 28, 2016).

51.  The Court grants the Motion to Dismiss with respect to Security Camera's claim for tortious interference with prospective economic advantage.

## III.
## MOTION FOR PRELIMINARY INJUNCTION

52.  Security Camera's Motion for Preliminary Injunction is premised on its claims that Defendants misappropriated, converted, or otherwise misused the Customer List. (*See* Pl.'s Mot. for Prelim. Inj. 1; Pl.'s Br. in Supp. of Mot. for Prelim. Inj. 7–18.) The Court has held that the parties' Agreement and its mutual release bar recovery for those claims. Accordingly, Security Camera has not demonstrated a likelihood of success on the merits and is not entitled to a preliminary injunction. *See A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 401, 302 S.E.2d 754, 759–60 (1983).

53.  Although Security Camera briefly discusses its claims regarding the interference with SCWddns.com, its Motion for Preliminary Injunction requests no relief related to those claims. (*See* Pl's Mot. for Prelim. Inj. 2.) Neither does its opening brief. (*See* Pl.'s Br. in Supp. of Mot. for Prelim. Inj. 23.) The reply does request the return of the domain, but even that belated, passing argument includes no discussion of irreparable harm. (*See* Pl.'s Reply in Supp. of Mot. for Prelim. Inj. 13.) The Court concludes that the issue is not properly presented as a basis for injunctive relief.

## IV.
## CONCLUSION

54.  For all these reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss:

a.    The Court grants the motion as to Security Camera's claims for misappropriation of trade secrets, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, tortious interference with existing and prospective economic advantage, and unjust enrichment.  These claims are **DISMISSED**.

b.    The Court denies the motion as to Security Camera's claims for unfair or deceptive trade practices, conversion, and common-law replevin, as related to Defendants' conduct involving SCWddns.com.

55.    Plaintiff's Motion for Preliminary Injunction is **DENIED**.


This the 1st day of May 2017.


/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases